EXHIBIT A

STATE OF MINNESOTA

COUNTY OF OLMSTED

DISTRICT COURT – CIVIL DIVISION

THIRD JUDICIAL DISTRICT

REECE HARRISON, on behalf of himself,
and a class of similarly situated individuals,

Court File No: _____
Case Type:  Other Civil (14)

            Plaintiff,

vs.

**SUMMONS**

LEGAL HELPERS DEBT RESOLUTION, LLC,
a Nevada limited liability company d/b/a THE LAW
FIRM OF MACEY, ALEMAN, HYSLIP & STEARN,
CDS CLIENT SERVICES, INC. a California corporation,
And James AGOSTO, a Minnesota resident.

            Defendants.

**THIS SUMMONS IS DIRECTED TO DEFENDANTS ABOVE NAMED.**

    **1. YOU ARE BEING SUED.**  The Plaintiff has started a lawsuit against you. The Plaintiff's Complaint against you is attached to this Summons. Do not throw these papers away. They are official papers that affect your rights. You must respond to this lawsuit even though it may not yet be filed with the Court and there may be no court file number on this Summons.

    **2. YOU MUST REPLY WITHIN 20 DAYS TO PROTECT YOUR RIGHTS.** You must give or mail to the person who signed this summons a written response called an Answer within 20 days of the date on which you received this Summons. You must send a copy of your Answer to the person who signed this Summons located at:

        VanDerHeyden Law Office, P.A.
        PO Box 6535
        Rochester, MN 55903

    **3. YOU MUST RESPOND TO EACH CLAIM.** The Answer is your written response to the Plaintiff's Complaint. In your Answer you must state whether you agree or disagree with each paragraph of the Complaint. If you believe the Plaintiff should not be given everything asked for in the Complaint, you must say so in your Answer.

    **4.     YOU WILL LOSE YOUR CASE IF YOU DO NOT SEND A WRITTEN RESPONSE TO THE COMPLAINT TO THE PERSON WHO SIGNED THIS SUMMONS.** If you do not answer within 20 days, you will lose this case. You will not get to tell your side of the story, and the Court may decide against you and award the Plaintiff everything asked for in the Complaint. If you do not want to contest the claims stated in the

Court File No._____

Complaint, you do not need to respond. A default judgment can then be entered against you for the relief requested in the Complaint.

**5. LEGAL ASSISTANCE.** You may wish to get legal help from a lawyer. If you do not have a lawyer, the Court Administrator may have information about places where you can get legal assistance. Even if you cannot get legal help, you must still provide a written Answer to protect your rights or you may lose the case.

**6. ALTERNATIVE DISPUTE RESOLUTION.** The parties may agree to or be ordered to participate in an alternative dispute resolution process under Rule 114 of the Minnesota General Rules of Practice. You must still send your written response to the Complaint even if you expect to use alternative means of resolving this dispute.

Dated: August __7__, 2012                    **VANDERHEYDEN LAW OFFICE, P.A.**

BY: _____
Brian J. Ellsworth (#0390596)
David W. VanDerHeyden (#122622)
302 Elton Hills Drive NW, Suite 300
Post Office Box 6535
Rochester, MN  55903-06535
Telephone: (507) 281-3949
Facsimile: (507) 281-2434


BAILLON THOME JOZWIAK
MILLER & WANTA LLP

Shawn J. Wanta, MN 0389164
Bryce M. Miller, MN 386901
222 South Ninth Street, Suite 2955
Minneapolis, MN 55402
Telephone: (612) 252-3570
Facsimile: (612) 252-3571

Attorneys for Named Plaintiff

STATE OF MINNESOTA                                    DISTRICT COURT

COUNTY OF OLMSTED                              THIRD JUDICIAL DISTRICT

---

REECE HARRISON, on behalf of himself
and a class of similarly situated
individuals,

                                        Plaintiff,

                                                  Case Type: Other Civil (14)
-v-
                                                  Court File: _____

LEGAL HELPERS DEBT
RESOLUTION, LLC, a Nevada limited                 Judge: w_____
liability company d/b/a THE LAW FIRM
OF MACEY, ALEMAN, HYSLIP, &             **CLASS ACTION COMPLAINT**
STEARN, CDS CLIENT SERVICES,                  **AND JURY DEMAND**
INC. a California corporation, and JAMES
AGOSTO, a Minnesota resident.

                                        Defendants.

---

Plaintiff Reece Harrison, on behalf of himself and all other similarly situated Minnesota

residents, by and through his undersigned counsel, files this Class Action Complaint and

Jury Demand and avers as follows:

### NATURE OF ACTION

    1.  Plaintiff brings this action to obtain monetary relief for himself and similarly

situated others against Defendants who, through a coordinated scheme, misrepresented

their debt resolution services, qualifications, and abilities to financially vulnerable

Minnesota consumers who were struggling to pay their bills.

    2.  Defendants engaged in a self-described "joint venture" to circumvent

Minnesota's Debt Settlement Services law, codified as Minn. Stat. § 332B, which

requires debt settlement services provides to register with the State, make specific

disclosures to prospective customers regarding the high-risk nature of debt settlement services, and limits the amount of fees a service provider can charge.

3. Defendants used Defendant Legal Helpers Debt Resolution, LLC, d/b/a The law firm of Macey, Aleman, Hyslip, & Stearn's status as a law firm to avoid registering with the State, to avoid providing disclosures to clients, and to charge fees in excess of the statutory maximum amount because law firms are not subject to Minnesota's Debt Settlement Services law.

4. The joint venture marketed itself to consumers as a law firm named Legal Helpers Debt Resolution, LLC ("LHDR"). LDHR promised to perform legal services, but in reality, it actually referred all of its legal work to Defendant CDS Client Services ("CDS"). LHDR charged consumers several thousand dollars to open the file plus the statutory maximum fee for CDS's services, which LHDR billed as a case cost.

5. The result of the scheme is that Plaintiff, like all Minnesota consumers, paid LHDR fees several thousand dollars in excess of the statutorily mandated maximum and did not receive any of the disclosures that the law requires debt settlement services to provide.

## JURISDICTION AND VENUE

6. At all times relevant hereto, Plaintiff has resided in Olmsted County, in the State of Minnesota.

7. A substantial part of the events giving rise to the claims asserted herein occurred in Minnesota, and this county and district, and Defendants regularly conducted business in this district by advertising, offering services, and communicating with Plaintiff and others in this district.

2

## PARTIES

8.   Upon information and belief, at all times pertinent to this Complaint Defendant Legal Helpers Debt Resolution, LLC, ("LDHR") is a Nevada limited liability corporation with its principal place of business at 233 South Wacker Drive, Suite 5150, Chicago, IL 60606 was engaged in commerce within the State of Minnesota and, more specifically, in Olmsted County, Minnesota.

9.   Upon information and belief, at all times pertinent to this Complaint Defendant Macey Aleman Hysplis & Searns ("for purposes of this complaint also referred to as "LDHR") a law firm located at 233 S. Wacker Dr. Suite 5150, Chicago, IL, 60606, was engaged in commerce within the State of Minnesota and, more specifically, in Olmsted County, Minnesota

10.  Upon information and belief, at all times pertinent to this Complaint Defendant CDS Client Services, Inc. also known as CDS Debt Resolution or Capital Debt Settlement ("CDS") is a California corporation.  CDS engages in the business of debt adjusting for profit.  CDS does business throughout the United States, including that State of Minnesota, and has its principal place office at 2152 Dupont Drive, Suite 101, Irvine, California, 92612.

11.  Defendant James Agosto is a Minnesota resident and the managing partner of Defendant LHDR's Minnesota office.

## BACKGROUND

### Debt Settlement Services

12.  Given the economic issues that many Americans have faced in the past few years, the debt settlement industry has boomed.

13. Historically, the high fees charged upfront generated many consumer complaints over the past several years. Consumers complained that they pay exorbitant of amount of fees and do not receive any results. Many consumers get sued by the creditors, have funds garnished, their account balances rise, are unable to settle their accounts, and are forced to file bankruptcy. Consumers may pay thousands of dollars without any refund or any results.

14. The predatory nature of the fees is such that program fees consume the monthly payments for the first several months of a consumer's participation in the program.

15. Often, debt settlement companies target people with high debts who are in desperate need of financial advice and assistance.

16. In response to unfair and deceptive debt settlement practices, the State of Minnesota, like many other states, enacted statutes or regulations protecting consumers. In 2009, the Minnesota legislature passed Minn. Stat. § 332B. Chapter 332B imposes requirements and regulations on debt settlement service providers.

17. The Statute requires all entities offering debt settlement services to make the following written "verbatim notice" using the prescribed font size and formatting (used below):

\*        \*        \*

# CAUTION

We CANNOT GUARANTEE that you will successfully reduce or eliminate your debt.

If you stop paying your creditors, there is a strong likelihood some or all of the following may happen:

• YOUR WAGES OR BANK ACCOUNT MAY STILL BE GARNISHED.

• YOU MAY STILL BE CONTACTED BY CREDITORS.

• YOU MAY STILL BE SUED BY CREDITORS for the money you owe.

• FEES, INTEREST, AND OTHER CHARGES WILL CONTINUE TO MOUNT UP DURING THE (INSERT NUMBER) MONTHS THIS PLAN IS IN EFFECT.

Even if we do settle your debt, YOU MAY STILL HAVE TO PAY TAXES on the amount forgiven.

Your credit rating may be adversely affected.

18. Additionally the 2009 law requires debt settlement providers to be licensed by the State of Minnesota.

19. Further, in order to protect Minnesota consumers, the statute regulates the amount of fees that can be charged, when those fees can be earned, and imposes many requirements and regulations that the debt settlement provider must follow.

## Defendants' Conspiracy

20. In response to the changes in laws, Defendants conspired to find a loophole in the laws so that Defendants may continue to charge high upfront fees without providing the necessary disclosures to consumers.

21. Defendant LHDR, also doing business as the law firm of Macey, Aleman, Hyslip, & Stearn, offered to use its status as law firm to provide a 'front' for the Debt settlement providers.

22. Defendant LDHR entered into agreement with Defendant CDS to provide debt settlement services under the LHDR name.

23. None of the defendants are licensed to offer debt settlement services in Minnesota.

24. Defendant CDS attempted to evade these consumer protection laws, especially the limitations on fees, by associating with and using the LDHR law firm as a "front."

25. Although Defendants create a false illusion that LDHR is performing the legal services, all of the debt settlement services are provided by Defendant CDS.

26. Upon information and belief, attorneys at LHDR do not control the method, manner, or means by which Defendants perform the debt settlement services for Plaintiff or otherwise directly supervise or control these activities.

## Plaintiff's Dealings with Defendants

27. On or about June 2010, Plaintiff responded to an Internet advertisement placed by Defendants.

28. Defendants contacted Plaintiff Reece Harrison in an effort to solicit his business and to provide debt settlement and credit repair services.

29. Defendants prominently advertised that their attorneys review the consumer's current financial situation and tailor a debt resolution plan that is unique to their situation. Throughout the entire sales pitch, Plaintiff believed he was communicating with a law firm. All correspondence throughout the entire sales process appears to be coming from the law firm LHDR, however, most fax numbers, telephone numbers, addresses, and communications were from Defendant CDS.

30. Defendants told Plaintiff that the Minnesota Attorney, James Agosto would receive Plaintiff's file and work on his case.  Upon information and belief, James Agosto never received, reviewed, or worked on Plaintiff's case.

31. In fact, upon information and belief, no attorney reviewed Plaintiff's financial situation, tailored a debt resolution plan, or supervised his case.

32. LHDR advertises that their services are different because they are attorneys and regulated by the ABA.  LHDR advertised, "Like a security blanket, we will take control of your debt resolution issues.  We will contact your unsecured creditors to advise them they should only communicate with our firm as your attorney … we are prepared to fully represent you to protect your rights under the law."  *See* Exhibit 1, Defendants' Advertisement.

33. Plaintiff ultimately chose to contract with Defendant LDHR because they were a law firm and decided to sign the firm's "Attorney Retainer Agreement" on June

22, 2010 based and relying upon the representation that a law firm would be handling his case. *See* Exhibit 2, Attorney Retainer Agreement.

34. The services set out in the "Attorney Retainer Agreement" are recited for the purpose of creating an illusion that the debt settlement services constitute the practice of law or are being performed incidental to the practice of law.

35. Defendants made various misrepresentations or failed to disclosed information in an effort to induce Plaintiff to enter into the illegal agreement, including but not limited to:

a.   Unsubstantiated claims of savings to Plaintiff. Defendants represented to Plaintiff that the program would save them 65% of the total debt; however, Defendants do not have a record of accomplishment that supports this statement.

b.   Failure to adequately inform Plaintiff that he will be subject to continued collection efforts, including lawsuits, and that his account balances will increase due to extended nonpayment under the program. Defendants fail to disclose that such efforts occur to Minnesota consumers on a regular basis.

c.   Defendants deceptively disparaged bankruptcy as a viable alternative for Plaintiff. Upon information and belief, LHDR stands to make significantly more fees for a client enrolled into a debt settlement program.

d.   Defendants represented that the majority of consumers that agree to retain Defendants complete the debt settlement program thereby becoming debt free. Upon information and belief, a high percentage of Minnesota consumers who

attempt Defendants' debt settlement program do not in fact complete the program, and do not become debt free as a result of their services.

e.   Defendants accepted money from Plaintiff for the purpose of settling all of his debts in the program for less than the amount owed knowing there was a substantial likelihood that they could not provide the services as promised.

f.   In an effort to induce Plaintiff to enter into a contract with Defendants, they implied they would assist him with a lawsuit in the event that he was sued by one of his creditors with which Defendants have agreed to negotiate by requesting all correspondence received from his creditors and indicating they would take care of everything. Defendants indicated as much while specifically disclaiming and such legal assistance in its 'attorney retainer agreement' with Plaintiff.

36. After signing up for the debt settlement plan, Plaintiff was advised to stop making payments to his creditors. Plaintiff incurred significant interest and fees during this time and he began receiving calls from creditors and debt collectors. Defendants advised Plaintiff to state that he is being represented by an attorney and keep a phone log. However, Plaintiff's debt collectors and creditors stated that they do not deal with debt settlement companies and that phone calls would continue.

37. Plaintiff became very worried when one of his creditors filed a lawsuit against him. Again, Plaintiff contacted Defendants to get legal advice on how to handle the situation. Defendants advised Plaintiff to write that he is not familiar with the debt and not responsible for the debt or something to that effect. Plaintiff told Defendants that he

cannot lie to the court and that he is familiar and responsible for the debt. Defendants advised Plaintiff that they could not help him.

38. Plaintiff thought and was led to believe that the creditors had agreed to the debt settlement plan. Upon information and belief, Defendants never contacted any of Plaintiff's creditors and no creditors agreed to Plaintiff's debt settlement plan.

39. Plaintiff had virtually no contact with any attorney throughout the entire process, but believed he was contracting with a law firm. Defendants' debt settlement system was intentionally designed to mislead Plaintiff into believing that attorneys would be performing their services on his behalf.

40. Plaintiff would have never contracted with LHDR or allowed LHDR to perform debt settlement services had he knew the true nature of their scheme. At all relevant times, Plaintiff was unaware of the relationship between defendants.

41. In order to further this scheme, non-lawyer employees of CDS were instructed to refer to themselves as being from LHDR. Non-lawyer employees of Defendants routinely gave legal advice and debt settlement advice in the name of LHDR.

42. Defendant CDS answered its telephone as it if were LHDR, thereby deceiving potential clients and plaintiff in the instant action. Defendants knew or should have known that this conduct would confuse or deceive Plaintiffs.

43. Defendants knew or should have known that a scheme whereby it allowed non-law firms and non-attorneys to use and market the name of a law firm would confuse and deceive consumers into believing they were dealing with attorneys or at least a law firm.

10

44. Defendants advertised using LHDR's name in order to sell their services. Defendants knew or should have known that this conduct would confuse or deceive Plaintiffs into believing that LHDR was the entity actually performing the settlement services.

45. Defendants split the "legal fees" paid by Plaintiff.

46. For these services, Plaintiff agreed to pay specified fees that, unknown to him at the time, were and are illegal due to their enormous size and accelerated timing of payment, among other things.

47. The debt settlement plan required Plaintiff to make monthly payments to Defendants of $842.11 during months 1–3 and $619.85 during months 4–48.  Plaintiff would pay a total of $30,419.51 and Defendants would collect at least $10,405.32 of that money as fees. *See* Exhibit 2, Payment Schedule.

48. Almost all of the fees were to be collected up front.  The Defendants would receive  a total of $8,855.33 in fees over the first 17 months of the 48 month plan.

49. During the first three months Plaintiff paid a total of $2,526.33 to Defendants towards his debt settlement plan. All $2,526.33 went to Defendants' fees and $0 went towards settling Plaintiff's debts.

50. After being sued by one his creditors, Plaintiff's wages were garnished and he was forced to file bankruptcy.

51. On March 11, 2011, Plaintiff decided to stop payments to Defendants. Plaintiff had been in the program for 8 months and paid a total of $5,625.36. Only $838.90 was returned to Plaintiff, the remaining $4,786.46 was kept by Defendants as fees. *See* Exhibit 3, termination letters.

## FIRST CAUSE OF ACTION

<u>Violations of Minnesota Statute 332B, Debt Settlement Services</u>

52. Plaintiff repeats, re-alleges, and incorporates by reference all of the foregoing paragraphs.

53. Minnesota Stat. 332B (2009) provides that:

> On or after August 1, 2009, it is unlawful for any person, whether or not located in this state, to operate as a debt settlement services provider or provide debt settlement services including, but not limited to, offering, advertising, or executing or causing to be executed any debt settlement services or debt settlement services agreement, except as authorized by law, without first becoming registered as provided in this chapter.

54. Defendants are each a "debt settlement services provider" within the meaning of Minn. Stat. § 332B.02, subdivs. 10 and 13 (2009). Alternatively, the joint venture between Defendants constitutes a "debt settlement services provider" within the meaning of the statute.

55. Since August 1, 2009, Defendants have offered to provide advice, or offered to act "as an intermediary between a debtor and one or more of the debtor's creditors, where the primary purpose of the advice or action is to obtain a settlement for less than the full amount of debt ... including ... offering debt negotiation, debt reduction, or debt relief services." Defendants have also advised, encouraged, assisted, or counseled debtors to accumulate funds in an account for future payment to of a reduced amount of debt to one or more of the debtor's creditors. Defendants have offered or provided its debt settlement services to debtors domiciled in the State of Minnesota.

12

56. As a debt settlement services provider, LDHR and the other Defendants each separately and jointly and severally have engaged in multiple, separate violations of Minn. Stat., Chapter 332B, including but not limited to the following violations:

a.   Defendants have offered, advertised, or executed or caused to be executed debt settlement services or debt settlement services agreements without first becoming registered with the Minnesota Commissioner of Commerce in violation of Minn. Stat. § 332B.03 (2009).

b.   Defendants' debt settlement services agreement does not comply with the requirements of Minn. Stat. § 332B.06, subdiv. 1, in that Defendants' agreement does not "conspicuously indicate whether or not the debt settlement provider is registered with the Minnesota Department of Commerce.

c.   Defendants have failed to disclose both orally and in writing whether or not it is registered with the Minnesota Department of Commerce and has further failed to provide its registration numbers in violation of Minn. Stat. § 332B.06, subdiv. 4.

d.   Defendants have violated Minn. Stat. § 332B.04, subdiv. 3, by failing to submit a surety bond, or other appropriate security, running to the State of Minnesota for the use of the State.

e.   Prior to entering a debt settlement services agreement with a Minnesota resident, Defendants do not prepare in writing and provide to the debtor

an individualized financial analysis, as required by Minn. Stat. § 332B.06, subdiv. 2, reflecting Defendants' determination that:

    i. the debt settlement plan proposed for addressing the debt is suitable for the individual debtor,

    ii. the debtor can reasonably meet the requirements of the proposed debt settlement services plan; and

    iii. based on the totality of the circumstances, there is a net tangible benefit to the debtor of entering into the proposed

f.     Before executing a debt settlement services agreement or providing any services, Defendants have failed to "make a determination, supported by sufficient bases, [as to] which creditors listed by the debtor are reasonably likely, and which are not reasonably likely, to participate in the debt settlement services plan set forth in the debt settlement services agreement," as required by Minn. Stat. §332B.06, subdiv. 3. If not all creditors listed in the debt settlement services agreement are reasonably likely to participate in the debt settlement services plan, Defendants have further failed to obtain written authorization from the debtor to proceed with the debt settlement services agreement without the likely participation of all listed creditors.

g.     Defendants have failed to provide debtors the verbatim notice specified in Minn. Stat. § 332B.06, subdiv. 4. The statutorily mandated notice explains (among other things) that a debtor's wages or bank accounts may be garnished; creditors may continue to contact the debtor or may sue the debtor; fees, interest and other charges will continue to accrue during the term of the

14

debt settlement program; taxes may be owed on any unpaid amount of debt that is settled by a creditor, and a debtor's credit rating may be adversely affected by participating in the program.

i.    Defendants fail to provide debtors with the cancellation rights set forth in Minn. Stat. §332B.07 and its debt settlement service agreement does not contain a prominent statement describing the debtor's cancellation rights as required by Minn. Stat. § 332B.06, subdiv. 5(1).

j.    Defendants claims, demanded, charged, or received fees that violate the limitations set forth in Minn. Stat. § 332B.09.

57.    Defendants made false, deceptive, or misleading statements or omission about the terms or condition of the debt settlement plan, and created confusion and misunderstanding regarding its services.

58.    Defendants advised Plaintiff to stop paying creditors in violation of Minn. Stat. § 332B.10(1) and Minn. Stat. § 332A.14(3).

59.    Defendants engaged in unfair, deceptive, and unconscionable practice by misrepresenting their roles in the debt settlement program and leading Plaintiff to believe that an attorney would represent him in violation of Minn. Stat. § 332B.10(10).

## SECOND CAUSE OF ACTION

### False Advertising

60.    Plaintiff repeats, re-alleges, and incorporates by reference all of the foregoing paragraphs.

61.    Minnesota's False Statement in Advertising Act ("FSAA"), Minn. Stat. § 325F.67, provides a cause of action to "any person, firm, corporation, or

association" who purchases goods or services through advertising that "contains any material assertion, representation, or statement of fact which is untrue, deceptive, or misleading."

62.     Where, as here, plaintiffs' claims inure to the public benefit, Minnesota's private-attorney general statute, Minn. Stat. § 8.31, subdiv. 3a, allows individuals who have been injured through a violation of the FSAA to bring a civil action and recover damages, together with costs and disbursements, including reasonable attorney's fees.

63.     By engaging in the conduct herein, Defendants violated and continue to violate Minn. Stat. § 325F.67.

## CLASS ACTION ALLEGATIONS

64.     Plaintiff brings this class action on behalf of himself and all other persons who while residents in the State of Minnesota entered into a service agreement with the defendant anytime beginning August 1, 2009 until present.

### Common Questions of Law and Fact

65.     Whether Defendants are engaged in a common course of illegal conduct toward the class by charging, receiving, or retaining fees in violation of Minn. Stat. § 332B.

66.     Whether Defendants made misrepresentations and omissions to the class to induce the class to sign a contract and do business with Defendant, specifically, whether Defendants misled the Class into believing that an attorney was working on their case.

67.    Whether Defendants established, controlled, managed, participated in, or with knowledge ratified the wrongful business practices of other Defendants.

68.    Whether Defendants are debt settlement companies or otherwise engaged in debt adjusting within the meaning of Minn. Stat. § 332B.

69.    Whether Defendants offered or performed services for Minnesota residents.

70.    Whether Defendants failed to register as required by Minn. Stat. § 332B or otherwise violated Minn. Stat. § 332B.

71.    Whether Defendants offered to or did in fact charge, receive, or retain fees in violation of Minn. Stat. § 332B.

72.    Whether Defendants were engaged in the unauthorized practice of law in Minnesota.

<u>Typicality</u>

73.    Plaintiffs' claims are typical of the Class members because they are based on the same factual, legal, and remedial theories as the claims of the class.

<u>Adequacy of Plaintiff and Counsel</u>

74.    Plaintiff can and will fairly and adequately represent and protect the interests of the Class because Plaintiff is similarly situated with, and has suffered similar injuries as, the members of the class he seeks to represent. Plaintiff has no interests that conflict with or are antagonistic to the interests of the entire Class. Plaintiff has retained attorney competent and experienced in class actions and consumer law who will vigorously prosecute this litigation.

<u>Predominance and Superiority</u>

75. A class action is superior to any other available method for the fair and efficient adjudication of the controversy because:

a. Common questions of law and fact predominate over any individual questions that may arise

b. No member of the Class has a substantial interest in individually controlling the prosecution of a separate action.

c. Upon information and belief, there are no pending lawsuits concerning this controversy.

d. It is desirable to concentrate the litigation of these claims in this forum since the acts complained of took place in this district and this forum is convenient to the parties, the class members, and the potential witnesses. The resolution of the claims of all class members in a single forum, and in a single proceeding, would be fair and efficient means of resolving the issues present in this litigation.

e. Prosecution of separate actions by individual members of the Class would create risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for the Defendants.

f. The class is specifically identifiable to facilitate provision of adequate notice and there will be no significant problems managing this case as a class action.

g. Resolution of the class members claims in this single class action is superior to resolution of this controversy through the filing of a host of individual actions as a matter of efficiency, consistency and in that it removes economic and other barriers to class members pursuing their claims.

## DEMAND FOR RELEIF

WHEREFORE, Plaintiff individually and as representative of the proposed Class, prays

for relief as follows:

1.    An order certifying Class members' claims pursuant to Minn. R. Civ. P. 23, appointing Plaintiff as representative of the proposed Class or such other Classes as the court may deem appropriate, and appointing undersigned counsel as Class counsel;

2.    An order enjoining Defendants from engaging in conduct in violation of Minn. Stat. § 332B;

3.    All actual, incidental, and consequential damages sustained by the Plaintiff and Class members as a result of the Defendants' violations.

4.    An award of statutory damages for Plaintiff and the class in excess of $50,000 to be established at trial;

5.    An award of punitive damages;

6.    Awarding costs, including costs of investigation and attorney fees, as authorized by Minn. Stat. § 8.31(3)a and Minn. Stat. §332B.13, subdiv. 2.

7.    Such other relief as the Court deems just and equitable.

Dated: August 7, 2012

BY: _____

VANDERHEYDEN LAW OFFICE, P.A.

Brian J. Ellsworth (#0390596)
David W. VanDerHeyden (#122622)
302 Elton Hills Drive NW; Suite 300
Post Office Box 6535
Rochester, MN  55903-6535
(507) 281-3949

BAILLON THOME JOZWIAK
MILLER & WANTA LLP

Shawn J. Wanta, MN 0389164
Bryce M. Miller, MN 386901
222 South Ninth Street, Suite 2955
Minneapolis, MN 55402
Telephone: (612) 252-3570
Facsimile: (612) 252-3571

Attorneys for Named Plaintiff

## ACKNOWLEDGMENT

The parties acknowledge that costs, disbursements, and reasonable attorney and

witness fees may be awarded to the opposing party or parties pursuant to Minnesota

Statute§ 549.211, subdiv. 3.

Dated: August 7, 2012

BY: _____

VANDERHEYDEN LAW OFFICE, P.A.

Brian J. Ellsworth (#0390596)
David W. VanDerHeyden (#122622)
302 Elton Hills Drive NW; Suite 300
Post Office Box 6535
Rochester, MN 55903-6535
(507) 281-3949

BAILLON THOME JOZWIAK
MILLER & WANTA LLP

Shawn J. Wanta, MN 0389164
Bryce M. Miller, MN 386901
222 South Ninth Street, Suite 2955
Minneapolis, MN 55402
Telephone: (612) 252-3570
Facsimile: (612) 252-3571

Attorneys for Named Plaintiff

## OUR PLEDGE TO OUR CLIENTS

Legal Helpers Debt Resolution, LLC is a national law firm committed to our clients' need for solutions to their debt problems.



In the these tough economic times, where our government is bailing out banks and credit card companies with your tax dollars, it seems ironic that no one has considered how to give consumers relief from their increasing debt; often caused by practices of credit card companies and banks but, sometimes, by circumstances of life.

Many people turn to debt resolution for different reasons. They may have seen their available credit drastically reduced or interest rates and minimum payments becoming excessively high. Many have suffered a financial setback. Our firm has a national reputation for excellence in the representation of consumers in financial distress. We are committed to providing the highest level of legal service.  Our success rests solely on the relationships we build with our clients. These relationships are built on trust, understanding, and mutual respect.

We make this three-step pledge to our clients:

**FIRST**
Like a security blanket, we will take control of your debt resolution issues. We will contact your unsecured creditors to advise them that they should only communicate with our firm as your attorney.  In the event that any creditor, or collection agency, violates Federal or state laws in regard to their debt collection practices, we are prepared to fully represent you to protect your rights under the law.

**SECOND**
We will analyze which debt resolution alternative makes the most sense for you and fully explain these options to you.  In many situations, we will propose the option of debt negotiation or a financial workout plan that you can afford.

**FINALLY**
If your circumstances change or a particular debt resolution plan does not meet your needs, we will be prepared to discuss additional alternatives, including the discharge of your debt.

You will never be without a viable alternative. This is our commitment and our pledge to our clients.

*LEGAL HELPERS DEBT RESOLUTION, LLC*

*Legal Helpers Debt Resolution, LLC is a trade name of the law firm of Macey, Aleman, Hyslip & Searns and operates under the firm name in states which do not permit law firm trade names. Actual results will vary based on individual situations and negotiations. LHDR makes no representation or guarantee that we will be able to lower your debts by a specific amount or percentage.  Legal Helpers Debt Resolution, LLC is a debt relief agency.  We help people with their debt resolution, including filing for protection under bankruptcy laws.*



EXHIBIT
__I__

3W - 4/1480



# LEGALHELPERS
## DEBT RESOLUTION, LLC

**MAIN OFFICE**
Sears Tower
233 S Wacker Dr., Suite 5150
Chicago, IL 60606

**ADMINISTRATIVE OFFICE**
2152 DuPont, Suite #101
Irvine, CA 92612
cs@legalhelpersdrcs.com



**EXHIBIT**

2

The National Law Firm of Macey, Aleman, Hyslip & Searns
P: (866) 528-9169 | F: (866) 945-9166 | www.legalhelpersdrcs.com

**PARTNERS**

Melinda Dionne (AL)
Eric Auten (AK)
Carlene Simmons (AZ)
Steve Westerfield (AR)
Richard Gustafson (CA)
Jason Searns (CO)
Matt Rousseau (CT)
Carucci Matthew (DE)
Karen Gatto (FL)
Berk Sauls (GA)

Greg Dunn (HI)
William Ranil (ID)
Thomas Macey (IL)
Jeffrey Aleman (IL)
Shabbana Razvan (IN)
Sam Turco (IA)
Keith Welman (KS)
Debbie Bowman (KY)
Gary Brown (LA)
Jeremey Miller (ME)

Sonia Kochhar (MD)
Troy Morrison (MA)
Lori Leigh (MI)
James Agosto (MN)
John Windsor (MS)
Keith Wellman (MO)
Sean Paul (MO)
Ralph Wilkerson (MT)
Sem Turco (NE)
Donald Norris (NV)

Brian McCaffrey (NH)
Thomas Nicely (NJ)
Ronald Banerji (NM)
Maria Coen (NY)
Grant Patten (NC)
Keith Tiader (ND)
Jeffrey Hyslip (OH)
Ron Brown (OK)
Amber Wolf (OR)
Thomas Nicely (PA)

Robert Jacquard (RI)
John Cantrell (SC)
Tim Hogan (SD)
Everett Mechem (TN)
Morran Pack (TX)
Oliver Myers (UT)
Martin Conway (VA)
Timothy King (VT)
Maria Lisa Gacutan (WA)
William Murphy (WI)

# CLIENT INFORMATION

Date : 06/22/2010

## CLIENT

Full Name: REECE HARRISON          SSN: ▓▓▓▓▓          DOB: ▓▓▓▓▓

Address: 1999 26th St NW          Apt #

City: Rochester          State: MN          Zip Code: 55901

Home Phone: ▓▓▓▓▓          Work Phone: ext.          Cell:

Occupation: ▓▓▓▓▓          Employer Name: ▓▓▓▓▓          Length of Employment: ▓▓▓

Email Address: ▓▓▓▓▓          Mother's Maiden Name: BERGES

## CO-CLIENT

Full Name          SSN:          DOB:

Address:          Apt #

City:          State:          Zip Code:

Home Phone:          Work Phone:          Cell:

Occupation:          Employer Name:          Length of Employment:

Email Address:          Mother's Maiden Name:

## DEBT INFORMATION

[X] Homeowner?   [ ] Renting?   Estimated Home Value $ 150,000.00          Mortgage Balance $ 140,000.00

Filed Bankruptcy?   [ ] Yes   [X] No   If Yes: Chapter [ ] 7   [ ] 13   Year Filed ?          Year Discharged?

Total Debt: $ 50,035.48          Monthly Payment: $ 842.11          Are you behind on payments?   [ ] Yes   [X] No

Number of months behind: 0          Number of Dependants: 0

*Office use only*

Total Unsecured Debt: $ 50,035.48          Program Length (months): 48

Programs First Payment: $ 842.11          Date of First Payment: 7/15/2010

Counselors Name: Dominic Garcia          Affiliate: CDS DEBT RESOLUTION

## HARDSHIP LETTER

Cause of Hardship:

| | | | |
|---|---|---|---|
| ☐ Company Slowdown | | ☐ Temporary Loss of Work | |
| ☐ Laid Off | | ☐ Disability | |
| ☐ Medical Problems | | ☐ Pay Cut | |
| ☐ Personal Injury | | ☐ Loss of Financial Provider | |
| ☐ Divorce | | ☒ Other | _____ |

Please Briefly Explain Hardship:          There was a hike in interest rates on all these accounts.

## BUDGET ANALYSIS                                    (All information should be on a monthly basis)

| | | | |
|---|---|---|---|
| Client Net Monthly Income | $ 3,870.00 | Funds Available | $ 1,110.00 |
| Co-Client Net Monthly Income | $ 0.00 | | |
| Total Income | $ 3,870.00 | | |

| | | | |
|---|---|---|---|
| Mortgage/Rent | $ 1,047.00 | Household Items | $ 100.00 |
| Home Owners Insurance | $ 0.00 | Clothing | $ 25.00 |
| Life Insurance | $ 0.00 | Laundry/Dry Cleaning | $ 0.00 |
| Medical Care | $ 0.00 | Utilities | $ 250.00 |
| Child Care / Support / Alimony | $ 0.00 | Telephone | $ 80.00 |
| Cable TV / Satellite | $ 0.00 | Auto Loans | $ 440.00 |
| Charity / Donations | $ 0.00 | Auto Other | $ 200.00 |
| Entertainment | $ 50.00 | Auto Insurance | $ 108.00 |
| Gym / Health | $ 0.00 | Education | $ 0.00 |
| Personal Care | $ 0.00 | Student Loans | $ 0.00 |
| Back Taxes | $ 0.00 | Misc / other | $ 210.00 |
| Food | $ 250.00 | Total Expenses | $2,760.00 |

# CREDITOR LISTING

*NOTE: If an account is in collection, please provide collection agency's recent statement, along with original creditors' statement.

| Creditor/Collector | Account Number | Balance | Account Holder(s) | Last Payment Date |
|---|---|---|---|---|
| CAPITAL ONE DMP | ▬▬▬▬1044 | $ 22,855.68 | [x] Client [ ] Co-Client [ ] Joint | |
| CITIBANK - MASTERCARD (2) | ▬▬▬▬0346 | $ 2,982.58 | [x] Client [ ] Co-Client [ ] Joint | |
| DISCOVER | XXXXXXXXXXXX9764 | $ 8,997.04 | [x] Client [ ] Co-Client [ ] Joint | |
| HSBC | ▬▬▬▬6179 | $ 9,620.89 | [x] Client [ ] Co-Client [ ] Joint | |
| USAA | ▬▬XXXXXXXX4425 | $ 5,579.29 | [x] Client [ ] Co-Client [ ] Joint | |
| | | | | |
| | | | Total Debt Owed: | $ 50,035.48 |

# ATTORNEY RETAINER AGREEMENT

**I.   Parties and Purposes:**  This Agreement for legal services is entered into on the date shown below between Legal Helpers Debt Resolution, LLC, also known as the law firm of Macey, Aleman, Hyslip & Searns (hereinafter referred to as LHDR) and REECE HARRISON  (hereinafter referred to as Client) relating to advice, counseling, analysis and negotiation services in regard to Client's unsecurred debt and related financial circumstances regarding credit cards and line of credit obligations (unsecured debt). This contract is solely between LHDR, any assign, or related entities that may be formed in the future and not any individual, partner, member, or employee of LHDR.  LHDR is a debt relief agency and law firm that provides debt resolution services to its clients.

**II.   Condition of Effectiveness:** This Agreement does not take effect, and LHDR has no obligation to provide any services, until both the Client and LHDR have executed a copy of this Agreement, delivered such copy to the other party, and the Client makes an initial flat fee retainer payment as provided for in Paragraph VIII.

**III.   Limited Retention:** LHDR will review Client's current unsecured debt burden and thereafter negotiate and attempt to enter into settlements with creditors of the Client in an effort to modify and/or restructure Client's current unsecured debt. LHDR and its staff will timely respond to all Client inquiries and keep the Client informed as to all offers of debt modification.  LHDR's obligation to negotiate shall only apply to specific unsecured debt obligations as disclosed by the Client.  The details of such obligation are included in the Creditor Listing Form of this Agreement.

**LHDR will not and does not provide the following services to Client:**
*   Tax, financial planning or accounting advice;
*   Attempt to repair credit or correct entries on credit reports;
*   Bankruptcy services, except as specifically provided for below;
*   Represent Client in any matter before a court, including foreclosure proceedings or in any arbitration or hearing; or
*   Eliminate harassment or collection calls from creditors or collectors.

In the event a creditor or collector sues Client, whether related to a debt obligation or any other claim, LHDR is under no obligation to provide representation.  LHDR will discuss specific debt related issues with Client and, if appropriate, offer additional legal services in regard to bankruptcy or other debt resolution services for Client's consideration.

**IV.   Term:**  The term of this Agreement shall commence on the effective date and continue until the negotiated resolution of unsecured debt disclosed by Client in the Creditor Listing Form of this Agreement or until termination of this Agreement as provided in Paragraph XIV.

**V.   Subcontracting Specific Tasks:** LHDR shall subcontract certain tasks including negotiations with creditors and collectors and certain customer support responsibilities to a third party.  LHDR and other legally trained, licensed personnel will supervise all negotiations and customer support and ensure that these services comply with established procedures.

**VI.   Client Obligations**

**The Client will perform the following obligation:**
*   Provide LHDR with all information and documents in regard to the unsecured debt it seeks to modify.  Such information provided must contain the current account balance and the name of the creditor and account number;
*   As an ongoing obligation, Client will provide all information related to the unsecured debt as requested by LHDR. All information provided by   Client must be truthful and accurate.  LHDR is under no obligation to verify information supplied by  Client.  Client will forward all correspondence from creditors and collection agencies, including collection letters, demands and complaints within five (5) days to LHDR.  If a creditor or collection agency telephones client, Client will not engage in debt resolution discussions.  If a creditor or collection agency engages in harassing or abusive conduct, the Client will promptly notify LHDR and provide complete and accurate information regarding such contacts;
*   Client will timely respond to all requests, communications or documentation from LHDR or its representatives and will promptly provide LHDR with any change of address or other contact information;
     Subsequent to the execution of this Agreement, Client shall, based on the advice of LHDR, determine and agree to a schedule of monthly payments based on the total amount of debt to be modified, including payment of appropriate fees and costs to LHDR (hereinafter referred to as Payment Confirmation Schedule), an copy of said schedule is attached hereto, incorporated by this reference.  Client agrees to make all the payments on the designateed dates; and
*   Client agrees to timely and fully pay all debt modification negotiated by LHDR and approved by Client.

**VII.   Law Firm's Obligations:** In consideration for Client's obligations as stated in Section VI, LHDR agrees to use its best efforts to obtain a satisfactory result for Client by providing basic legal services in connection with the debt review and modification for Client on an efficient and cost-effective basis.   Client expressly agrees that LHDR makes no specific guarantee regarding the outcome of the case, including but not limited to, successful modification or discharge of debt, and/or whether or not LHDR can successfully reduce the balance of all unsecured debts.   LHDR offers its advice based on the information as disclosed by Client and Client agrees that LHDR is not responsible and assumes no liability for changes in the law, changes in Client's financial situation, and/or facts as revealed after review of documentation that could affect in any way any advice LHDR gives Client.  LHDR will adhere to the specific disclosures regarding contingency fees and the minimum performance standards as outlined in the Payment Confirmation

**VIII.  Fees and Costs:** In consideration for all services to be rendered, Client agrees to pay LHDR an initial flat fee retainer of five hundred dollars ($500) for debt review, analysis and structuring of a debt resolution plan.   The fee retainer may be paid over three months with the first payment of $166.67 due at the time of execution of the agreement with the second payment of $166.67 due after 30 days of the execution and the final payment of $166.67 due at 60 days after execution of the agreement.  In additiion, Client shall pay the law firm a monthly maintenance fee/cost for their debt resolution plan in the amount of $50 commencing in the first month of their debt resolution plan.

If LHDR is able to obtain a sixty-five percent (65%) or greater reduction of Client's total scheduled debt off the original balance on the accounts listed in the Creditor Listing Form, Client agrees to pay LHDR on a contingency fee basis five percent (5%) of the amount of debt reduction (total amount enrolled in the program less amount of settlement) accomplished by the work of LHDR and its staff, which will be reconciled at the end of the program.  The initial $500 flat fee retainer and other administrative legal fees paid by Client shall be fully credited as a partial payment towards the Client's obligation for the 5% contingency fee.  Client agrees to have their initial flat fee retainer of $500 automatically drafted by LHDR (or its designees) based on an agreed payment schedule from an authorized Federal Deposit Insurance Corporaton (referred to as 'F.D.I.C.') insured bank account on 07/15/2010.

The implementation, management and maintenance of a debt resolution plan by LHDR shall be performed under the direct supervision of LHDR by CDS Client Services (CDSCS) at a cost of fifteen percent (15%) of the Client's total scheduled debt (hereinafter referred to as Service Cost).  LHDR has a non-exclusive reciprocal referral Agreement with CDSCS to provide these services under LHDR's direct supervision.  These are services required for the debt resolution plan, but are not legal services.  There is no attorney-client relationship between Client and CDSCS in regard to these services and any specific communications between client and CDSCS are not protected by attorney-client privilege. CDSCS cannot and will not provide any legal advice to the Client other than as communicated through CDSCS by LHDR and under LHDR's supervision.  The 15% Service Cost shall be paid by Client.  The first three (3) program payments are applied to both service and attorney service costs.  Within these first three months, depending on program term and estimated savings percentage, any payment overage would be applied to the Client's settlement savings.  The initial payment is equal to three and three quarter percent (3.75%) of the Client's total debt accepted into the program.  The remaining balance of the service cost is equivalent to eleven and one quarter percent (11.25%) of the Client's total debt accepted into the program.  The balance of costs shall be paid by Client in equal consecutive monthly payments beginning on month four (4) and continuing through to completion of Client's fee schedule.  Monthly payments in excess of costs will have the overage directly allocated towards Client's settlement saving fund (see payment schedule for specific plan details).

Client agrees to have their payments of Service Cost and Savings automatically drafted by LHDR (or its designees) from an authorized F.D.I.C. bank account with Client's first payment to start on 07/15/2010 and thereafter each month on the:  ☐ 1st   ☐ 5th   ☐ 10th   ☐ 15th   ☐ 20th   ☒ 25th.

**IX.   Electronic Payment Authorizations:** By signing this Agreement, Client authorizes LHDR (or its designees) to deduct all legal fees and Service Costs via electronic payment authorizations from an authorized checking, savings, or other F.D.I.C. insured bank account. LHDR requires a minimum of five (5) business days to change any scheduled Electronic Funds Transfer ("EFT") from an authorized bank account. It is also understood that Client shall not make or request changes of his or her payment schedule during the first ninety (90) days after execution of this Agreement.  If any payment change occurs within the first ninety (90) days of execution of this Agreement, Client will be charged an additional cost of twenty-five dollars ($25). It is also understood that Client shall not make or request more than two (2) changes of his or her payment schedule within a twelve (12) month period after the first ninety (90) days of execution of this Agreement without termination from the program. Non-sufficient funds ("NSF") in Client's authorized bank account, on Client's scheduled payment date, is considered a non-payment and there will be a twenty-five dollar ($25) cost automatically charged to Client's account for any NSF transactions.

ARA-IP-9-23-09

**X.   Client Acknowledgement:**

Client acknowledges and agrees that:

- The outcome of LHDR's negotiation of any specified account entered by Client into the debt negotiation program is uncertain and results may vary;
- The service provided by LHDR does not include the modification, collection or improvement of Client's credit reports or credit score;
- LDHR's debt negotiation may not prevent creditor or collection agency harassment, nor prevent phone calls on behalf of creditors or collection agencies to Client;
- Client may be sued by creditors or collection agencies and in that event LHDR's services pursuant to this Agreement does not include legal representation on those matters;
- The discharge of indebtedness may be considered a taxable event and Client should consult a tax professional for any such service;
- Client will continue to incur late fees and penalties on the accounts during the program; and
- Client's participation in the program may adversely affect the Client's credit score.

**XI.   Additional Debt:** Client should not incur any new or additional debt and should refrain from using or obtaining credit during the LHDR debt resolution representation. Client understands all credit cards and/or lines of credit shall be closed and that no additional credit cards and/or lines of credit should be applied for during the LHDR debt resolution representation. Client understands that they may keep one credit card, not to be accepted in the program, open for emergency purposes only. This credit card should not be from the same issuing bank as any accounts entered by Client into the LHDR debt resolution representation.

**XII.   Debt Resolution Minimum Standards of Representation:** LHDR maintains a standard of representation for each individual account entered by Client into the LHDR debt resolution plan, of a minimum of settlement debt reduction of thirty-five percent (35%) of the debt's face value at the time of settlement, including interest, penalties and late fees. In the event that LHDR does not meet this minimum standard for a particular account, it shall refund the pro rata share of the 15% Service Cost paid to CDSCS for such work under the direct supervision of LHDR and LHDR shall further direct CDSCS to settle the individual account for Client at no additonal cost. This refund is subject to all of the following terms and conditions:

- Client must act in complete compliance with this Agreement and shall cooperate with LHDR under this Agreement;
- Client must not default on any Service Cost payment obligations under an agreed-upon settlement for any accepted account;
- If for any reason, Client is unwilling or is unable to accept a proposed settlement on any contracted account with a settlement debt reduction of thirty-five percent (35%) of the debt's face value at the time of settlement minus fees and costs of this Agreement, or Client otherwise fails or refuses to accept any such settlement on any contracted account with a settlement debt reduction of thirty-five percent (35%) of the debt's current face value at the time of settlement, minus fees and costs of this Agreement, this minimum standard provision shall be null and void, and have no force or effect;
- Should LHDR be unable to settle one or more of Client's individual accounts accepted pursuant to this Agreement, any refund shall be calculated on a pro rata basis as to the Service Cost paid to LHDR attributable to such individual unsettled account;
- This minimum standard provision does not apply to any Client's individual accounts accepted into the debt resolution plan which have had balance transfers, cash advances, accounts initially accepted with balances fewer than one thousand dollars ($1,000) or where there has been a law suit already filed on such individual account. LHDR will discuss with the Client other legal remedies in the event of such circumstances including Chapter 7 or Chapter 13 bankruptcy;
- Client must have completed the program and not terminated the Agreement prior to LHDR having an opportunity to settle all acounts on the Creditor Listing Form;
- Any accounts subject to garnishment are excluded from the minimum standard representation.

**XIII.   Impact on Credit Rating:** Client acknowledges that nonpayment, minimal payments, or settlement payments to creditors may result in derogatory credit information transmitted to the major credit reporting agencies, and in the event that any negative effect is caused to Client's credit profile, LHDR does not provide credit repair services and Client acknowledges herein that it received proper notice regarding possible consequences to the Client's credit rating.

**XIV.   Termination and Severability:** Client agrees that both parties may sever the relationship at any time. The party choosing to terminate the Agreement will document the decision by sending a 30-day written notice to the other party. The termination will occur upon receipt of such notice. If such termination occurs, the client shall only be responsible for the fees and costs incurred through the date of cancellation and the initial flat fee retainer. LHDR may cancel this Agreement if the Client fails to make two (2) successive monthly payments. If any legal action is brought regarding this Agreement, the prevailing party shall be entitled to legal fees and court costs.

**XV. Authorizations:**

The Client authorizes LHDR as follows:

- The client authorizes LHDR to disclose information regarding Client's financial condition or status to any creditor or collector in regard to the debt resolution plan. Further, LHDR may obtain information concerning Client from such creditors;

- Client authorizes LHDR to disclose to creditors and collectors that LHDR and its representatives, or subcontractors, are authorized to negotiate debt resolution terms on behalf of Client; and

- Client authorizes LHDR to negotiate and modify the unsecured debt listed in the Creditor Listing Form of this Agreement.

**XVI. Confidentiality:** LHDR agrees that any information provided by Client will be kept confidential and only be used in providing the negotiation and modification services described in this Agreement.

**XVII. Disclosures and Disclaimers:** Client acknowledges and understands that LHDR will not agree to provide the services under this Agreement absent Client's full understanding and acceptance of the basis for the work to be performed. LHDR and its agents and representatives provide services related to the modification and restructure of the Client's unsecured debt. LHDR cannot and does not make any guarantee of any kind regarding the success of any negotiation in regard to such modification. Client acknowledges that each case is unique and that results may vary. Client understands that there are other remedies available in regard to their goal of debt resolution including consumer credit counseling and bankruptcy. (See Exhibit A of this Agreement for further information.) Consumer Credit Counseling may impact less on the Client's credit rating and reduce interest rates on current debt, but generally will require payment of the majority of the Client's existing debt. Bankruptcy may discharge the majority of Client's debts; however Client has requested LHDR to pursue other alternatives at this time to avoid bankruptcy. LHDR will discuss and advise Client as to the bankruptcy option, including fees and costs, at any time that Client's circumstances change or Client requests such consultation. There are no additional fees or costs required from Client for such consultation and advice regarding bankruptcy. In the event that the Client elects to pursue a bankruptcy option in the future with LHDR, a full disclosure regarding fees shall be given including any credits or pro rata reduction in fees based on LHDR's representation of the Client pursuant to this Agreement.

**XVIII. Arbitration:** In the event of any claim or dispute between Client and LHDR related to the Agreement or related to any performance of any services related to this Agreement, such claim or dispute shall be submitted to binding arbitration upon the request of either party upon the service of that request. The parties shall initially agree on a single arbitrator to resolve the dispute. The matter may be arbitrated either by the Judicial Arbitration Mediation Service or American Arbitration Association, as mutually agreed upon by the parties or selected by the party filing the claim. The arbitration shall be conducted in either the county in which Client resides, or the closest metropolitan county. Any decision of the arbitrator shall be final and may be entered into any judgement in any court of competent jurisdiction. The conduct of the arbitration shall be subject to the then current rules of the arbitration service. The costs of arbitration, excluding legal fees, will be split equally or be born by the losing party, as determined by the arbitrator. The parties shall bear their own legal fees.

**XIX. Integration:** This Agreement and all schedules are the complete and exclusive statement of the Agreement of the parties and supersede any proposal, prior Agreement, oral or written, and any other communication related to this matter.

**XX. Enforceability:** In the event that any portion of this Agreement is determined to be illegal or unenforceable, the determination will not affect the validity or enforceability of the remaining provisions of this Agreement, all of which shall remain in full force and effect. The parties agree to insert another provision that will be valid to come in closest to the original intent of the Agreement.

**XXI. Amendment:** This Agreement may be modified by a subsequent Agreement by the parties only by an instrument in writing, signed by both LHDR and Client and no waiver of any provision or condition of this Agreement shall be effective or binding unless such waiver be in writing and signed by the party claiming to have given such waiver.

Witness our hands and seals this 22nd day of June, 2010.

*Reece Harrison*
_____
Signature of Client

_____
Signature of Co-Client

_____
Signature of LHDR

Exhibit A
Disclosure and Election of Services

LHDR is a full service debt resolution law firm including debt negotiation and restructuring, bankruptcy services and where appropriate referral to consumer credit counseling agencies. The following provides information as to all these approaches to debt resolution for your review. Clients should fully understand the advantages and disadvanages of each to make an informed decision.

**Credit Counseling** offers services that will allow you to work with a certified credit counselor to devise a plan that is tailored to your specific needs and goals. Credit counseling agencies often provide services for free and will help to educate you about how to avoid financial problems in the future by offering debt management classes or seminars. They do not erase your debt. Instead they work with you to budget money so that you can pay off the debt often times by debt consolidation. Collections by your creditors may continue while using a credit counselor and most plans require you to pay your entire debt balance over the life of the plan. Consumer credit counseling agencies are required to advise you that they are compensated by the creditors based on the amount of debt they are able to have you pay.

**Bankruptcy** will usually discharge your unsecured debt and your creditors are not permitted to contact you once you have filed with the court. There are two kinds of bankruptcy; Chapter 13 bankruptcy where you are generally able to keep property that is mortgaged such as your house or car and are expected to repay debts in three to five years and Chapter 7 bankruptcy where you must give up all non-exempt property and assets that you own in exchange for a discharge of most debt. Bankruptcy may be appropriate if you have pending foreclosures, collection litigation or wage garnishments, however, you will generally be unable to establish credit for up to ten years. In 2005, the bankruptcy law was changed to make it more difficult for some consumers to file Chapter 7 bankruptcy based on a financial means test and credit counseling requirements that may require a repayment of some of your debt.

**Debt Negotiation** is a process where the law firm, based on your specific circumstances, develops a plan to manage your debt resolution with your creditors. In general terms, it is a process of negotiating with your creditors for a lower balance/forgiveness of debt, a reduced interest rate, a reduced monthly payment or other restructuring alternatives. To be successful in debt negotiation, you need to have sufficient cash flow to meet your living expenses each month and provide some funds toward resolution of your debt. LHDR will contact all your unsecured creditors in writing to inform them that you are represented by the law firm and that we are advising you as to all alternatives for debt resolution. As you have indicated in your compliance review, you prefer LHDR to attempt debt negotiation as an alternative to bankruptcy. However, if your financial circumstances change, we will advise you as to other debt resolution alternatives outlined above, so you can make an informed decision based on our advice.

If you have any questions regarding the above options, please contact us for further explanation. If you are ready to proceed, sign below your acknowledgement that you have reviewed all possible debt resolution options and have determined that debt negotiation by LHDR is your preference, subject to your ability to request a different alternative if your circumstances change in the future. Please review Section XVII of this Agreement prior to executing your informed consent below.

I have reviewed all debt resolution options available to me including bankruptcy and consumer credit counseling and elect to pursue debt negotiation services with LHDR, subject to my ability to request other alternatives, based on changes in my financial circumstances.

_Reece Harrison_                                 6/22/2010
Signature of Client                              Date


_____                          _____
Signature of Co-Client                           Date

ARA-IP-9-23-09

THIS PORTION FOR ELECTRONIC PAYMENT AUTHORIZATION

By signing below, I authorize Legal Helpers Debt Resolution, LLC (LHDR) (or their designees) to process debit entries from my checking, savings, or other F.D.I.C. insured bank account. This authority shall remain effective until cancelled by me in writing, at least five (5) business days prior to my scheduled payment due date. I understand there wil be a twenty-five dollar ($25) cost automatically charged to my account for any non-sufficient funds (NSF) transactions. I will provide LHDR with a voided check or savings deposit slip.

Name on Account (Please Print):

| HARRISON | REECE |
|----------|-------|
| Last Name | First Name |

| | |
|----------|-------|
| Last Name | First Name |

Please transfer payments directly from my  ☒ Checking account,  ☐ Savings account, or ☐ Other account.

Bank Name: ▓▓▓▓▓▓▓▓▓▓▓▓

Bank Address: ▓▓▓▓▓▓▓▓▓

Bank City: ▓▓▓▓        St: ▓▓▓        Zip: ▓▓▓▓▓

Bank Phone #: ▓▓▓▓▓▓▓

*Routing #: ▓▓▓▓▓        Account #: ▓▓▓▓▓▓

*Routing numbers are always 9 digits long and always start with 0, 1, 2, or 3.

| *Reece Harrison* | REECE HARRISON | 6/22/2010 |
|------------------|----------------|-----------|
| Authorized Signature on Account | Printed Name | Date |

Attach Voided Check or Savings Deposit Slip Here

ARA-IP-9-23-09



**LEGAL**HELPERS
DEBT RESOLUTION, LLC

The National Law Firm of Macey, Aleman, Hyslip & Searns
P: (866) 528-9169 | F: (866) 945-9166 | www.legalhelpersdrcs.com

**MAIN OFFICE**
Sears Tower
233 S Wacker Dr., Suite 5150
Chicago, IL  60606

**ADMINISTRATIVE OFFICE**
2152 DuPont, Suite #101
Irvine, CA  92612
Ph: (866) 528-9169
F: (866) 945-9166
cs@legalhelpersdrcs.com

# POWER OF ATTORNEY

I/We, REECE HARRISON _____, _____,

Located at 1999 26th St NW _____

in the City of Rochester _____, State of MN____ Zip __55901___
hereby appoint Legal Helpers Debt Resolution, LLC ('L.H.D.R.') as my/our attorney-in-fact to
do the acts described in this Power of Attorney.  L.H.D.R. (and/or its designees) is hereby
authorized to act as my/our limited financial advisor and to represent me/us in negotiating
the modifications, reduction, settlement, and payment on any and all debts allegedly due and
owing in my/our name.

I/We authorize L.H.D.R. to request and receive confidential credit and account information from
creditors, credit bureaus, collection agencies, creditor attorneys, or any other third parties who may
be in possession of such information and could be viewed by me/us personally.

This Power of Attorney revokes all earlier Power of Attorney given by, or on behalf of, me/us relating
to all communications of creditors' claims and shall be effective and binding on me/us until revoked
by an instrument in writing executed by me/us. I/We further authorize L.H.D.R. to release a copy of
this Power of Attorney to my/our creditors or their agents.  A copy of this Power of Attorney shall be
deemed as effective as an original.

Executed on this 22nd day of June, 2010.

*Reece Harrison*
_____          ▓▓▓▓▓▓▓▓▓▓▓▓
Client Signature                         Client Social Security Number


_____          _____
Co-Client Signature                      Client Social Security Number

**PARTNERS**

Melissa Rhames (AL)          Greg Dunn (FL)           Sonia Kochhar (MD)        Brian McCaffrey (NH)       Robert Jacquard (PA)
Eric Adam (AR)               William Roehl (GA)       Troy Morrison (MA)        Thomas Neal (NJ)           John Carroll (SC)
Carlene Simmons (AZ)         Thomas Macey (IL)        Lori Leigh (MI)           Ronald Buzary (NM)         Tim Hogan (SD)
Steve Warzalski (AR)         Jeffrey Aleman (IL)      James Agosto (MN)         Maria Coan (NY)            Ernest Mecham (TN)
Richard Gustafson (CA)       Shoshana Ramai (LA)      John Windsor (MS)         Grant Patson (NC)          Martin Peck (TX)
Jason Searns (CO)            Sam Turco (IA)           Keith Wallman (MO)        Rashi Taskar (ND)          Oliver Myers (UT)
Matt Rousseau (CT)           Keith Wallman (KS)       Sean Paul (MT)            Jeffrey Hyslip (OH)        Martin Conroy (VA)
Gerard Mathison (DE)         Debbie Bowman (KY)       Ralph Williamson (NE)     Ron Brown (OK)             Timothy King (VT)
Karen Gatter (FL)            Gary Brown (LA)          Sam Turco (NE)            Amber Flo (OR)             Marcia Chamberlain (WI)
Berk Saud (GA)               Jeremy Sklar (ME)        Donald Nonis (NV)         Thomas Macey (PA)          William Murphy (WV)

## PAYMENT SCHEDULE

| Client: | REECE HARRISON | | Total Debt: | $50,035.48 | | Program Start Date: | 7/15/10 |
|---|---|---|---|---|---|---|---|
| Term: | 48 | | Settlement Amount: | $20,014.19 | | Recurring Start Date: | 8/25/10 |

| Program Month | Date | Monthly Maint. Cost | Retainer | Monthly Admin Cost | Savings | Total Payment |
|---|---|---|---|---|---|---|
| 1 | 7/15/2010 | $50.00 | $166.67 | $625.44 | $0.00 | $842.11 |
| 2 | 8/25/2010 | $50.00 | $166.67 | $625.44 | $0.00 | $842.11 |
| 3 | 9/25/2010 | $50.00 | $166.66 | $625.44 | $0.00 | $842.10 |
| 4 | 10/25/2010 | $50.00 | $0.00 | $402.07 | $167.78 | $619.85 |
| 5 | 11/25/2010 | $50.00 | $0.00 | $402.07 | $167.78 | $619.85 |
| 6 | 12/25/2010 | $50.00 | $0.00 | $402.07 | $167.78 | $619.85 |
| 7 | 1/25/2011 | $50.00 | $0.00 | $402.07 | $167.78 | $619.85 |
| 8 | 2/25/2011 | $50.00 | $0.00 | $402.07 | $167.78 | $619.85 |
| 9 | 3/25/2011 | $50.00 | $0.00 | $402.07 | $167.78 | $619.85 |
| 10 | 4/25/2011 | $50.00 | $0.00 | $402.07 | $167.78 | $619.85 |
| 11 | 5/25/2011 | $50.00 | $0.00 | $402.07 | $167.78 | $619.85 |
| 12 | 6/25/2011 | $50.00 | $0.00 | $402.07 | $167.78 | $619.85 |
| 13 | 7/25/2011 | $50.00 | $0.00 | $402.07 | $167.78 | $619.85 |
| 14 | 8/25/2011 | $50.00 | $0.00 | $402.07 | $167.78 | $619.85 |
| 15 | 9/25/2011 | $50.00 | $0.00 | $402.07 | $167.78 | $619.85 |
| 16 | 10/25/2011 | $50.00 | $0.00 | $402.07 | $167.78 | $619.85 |
| 17 | 11/25/2011 | $50.00 | $0.00 | $402.09 | $167.76 | $619.85 |
| 18 | 12/25/2011 | $50.00 | $0.00 | $0.00 | $569.85 | $619.85 |
| 19 | 1/25/2012 | $50.00 | $0.00 | $0.00 | $569.85 | $619.85 |
| 20 | 2/25/2012 | $50.00 | $0.00 | $0.00 | $569.85 | $619.85 |
| 21 | 3/25/2012 | $50.00 | $0.00 | $0.00 | $569.85 | $619.85 |
| 22 | 4/25/2012 | $50.00 | $0.00 | $0.00 | $569.85 | $619.85 |
| 23 | 5/25/2012 | $50.00 | $0.00 | $0.00 | $569.85 | $619.85 |
| 24 | 6/25/2012 | $50.00 | $0.00 | $0.00 | $569.85 | $619.85 |
| 25 | 7/25/2012 | $50.00 | $0.00 | $0.00 | $569.85 | $619.85 |
| 26 | 8/25/2012 | $50.00 | $0.00 | $0.00 | $569.85 | $619.85 |
| 27 | 9/25/2012 | $50.00 | $0.00 | $0.00 | $569.85 | $619.85 |
| 28 | 10/25/2012 | $50.00 | $0.00 | $0.00 | $569.85 | $619.85 |
| 29 | 11/25/2012 | $50.00 | $0.00 | $0.00 | $569.85 | $619.85 |
| 30 | 12/25/2012 | $50.00 | $0.00 | $0.00 | $569.85 | $619.85 |

| Program Month | Date | Monthly Maint. Cost | Retainer | Monthly Admin Cost | Savings | Total Payment |
|---|---|---|---|---|---|---|
| 31 | 1/25/2013 | $50.00 | $0.00 | $0.00 | $569.85 | $619.85 |
| 32 | 2/25/2013 | $50.00 | $0.00 | $0.00 | $569.85 | $619.85 |
| 33 | 3/25/2013 | $50.00 | $0.00 | $0.00 | $569.85 | $619.85 |
| 34 | 4/25/2013 | $50.00 | $0.00 | $0.00 | $569.85 | $619.85 |
| 35 | 5/25/2013 | $50.00 | $0.00 | $0.00 | $569.85 | $619.85 |
| 36 | 6/25/2013 | $50.00 | $0.00 | $0.00 | $569.85 | $619.85 |
| 37 | 7/25/2013 | $50.00 | $0.00 | $0.00 | $569.85 | $619.85 |
| 38 | 8/25/2013 | $50.00 | $0.00 | $0.00 | $569.85 | $619.85 |
| 39 | 9/25/2013 | $50.00 | $0.00 | $0.00 | $569.85 | $619.85 |
| 40 | 10/25/2013 | $50.00 | $0.00 | $0.00 | $569.85 | $619.85 |
| 41 | 11/25/2013 | $50.00 | $0.00 | $0.00 | $569.85 | $619.85 |
| 42 | 12/25/2013 | $50.00 | $0.00 | $0.00 | $569.85 | $619.85 |
| 43 | 1/25/2014 | $50.00 | $0.00 | $0.00 | $569.85 | $619.85 |
| 44 | 2/25/2014 | $50.00 | $0.00 | $0.00 | $569.85 | $619.85 |
| 45 | 3/25/2014 | $50.00 | $0.00 | $0.00 | $569.85 | $619.85 |
| 46 | 4/25/2014 | $50.00 | $0.00 | $0.00 | $569.85 | $619.85 |
| 47 | 5/25/2014 | $50.00 | $0.00 | $0.00 | $569.85 | $619.85 |
| 48 | 6/25/2014 | $50.00 | $0.00 | $0.00 | $569.79 | $619.79 |

| Grand Totals: | | $2,400.00 | $500.00 | $7,505.32 | $20,014.19 | $30,419.51 |

Applicant Signature: *Reece Harrison*

Print Name: _____

Date: 6/22/2010

MRS Loron A
Customer Call Center
861-528-9169. - cruisor
Ext. 604   9-5
                 pac. sta
                 time

FAX 866-945-9166.

Acct # 3W41480

FAX Call Log Every 2 weeks

## ADDENDUM FOR EXTENSION OF PROGRAM

I/We, the undersigned, understand that the maximum length of the debt negotiation program offered by Legal Helpers is 46 months for my/our debt amount. In consideration of my/our current financial situation LHDR, has agreed to accept a 48 month term, I/we understand that extending the program term beyond 46 months could increase the possibility of a lawsuit on the part of my/our creditors and/or may compromise the chances of LHDR being able to accomplish the estimated settlement stated. I/We agree to contribute any additional funds that become available in order to bring the program term within the recommended 46 months. I/We understand that LHDR will negotiate the best possible settlement with all my creditors on my behalf.

*Reece Harrison*
Client Signature

REECE HARRISON
Print Name

6/22/2010
Date


Co-Client Signature

Print Name

Date

## SPECIAL PURPOSE ACCOUNT APPLICATION

I hereby apply for and agree to establish a non-interest bearing special purpose account (the "Special Purpose Account") to be administered at a bank selected by Global Client Solutions LLC ("Global") for the purpose of accumulating funds to repay my debts in connection with a debt settlement program (your "Program") sponsored by the organization identified below (the "Sponsor"). I understand that the Special Purpose Account's features, terms, conditions and rules are further described in an Account Agreement and Disclosure Statement that accompanies this Application (the "Agreement"). **I acknowledge that I have received a copy of the Agreement; that I have read and understand it; that the Agreement is fully incorporated into this Application by reference; and that I am bound by all of its terms and conditions.** I also understand that this Application is subject to a customer identification program, as required the USA Patriot Act and other applicable laws; and accordingly, I hereby represent that the following information is true and complete to the best of my knowledge and belief. In addition, I understand that I may be required to provide a copy of a driver's license and/or other information from time to time for use in connection with the verification of my identity and the administration of the Account

### SPECIAL PURPOSE ACCOUNT OWNERSHIP, CONTROL AND USE

I understand that my Special Purpose Account, when established in accordance with this Application, will be my sole and exclusive property; that only I may authorize deposits to and disbursements from my Special Purpose Account; and that I may withdraw funds from and/or close my Special Purpose Account at any time as provided for in the Agreement. I hereby authorize (a) periodic deposits to be made to my Special Purpose Account pursuant to the authorization provided below and (b) periodic disbursements to be made from my Special Purpose Account pursuant to instructions that I may give from time to time. In this regard, I hereby authorize payment from my Special Purpose Account of the fees and charges provided for in this Application and the Agreement.

### PERMISSION TO SHARE DATA

I hereby grant permission for the bank selected by Global, Global and the Sponsor to share information regarding my Special Purpose Account and my Program with each other to facilitate the transactions I may initiate that involve my Special Purpose Account, and with any other party that is essential to the administration of my Special Purpose Account and/or my Program. I understand that the Agreement provides additional information relating to privacy.

| Applicant Last Name | First Name | M.I. | Social Security # | Date of Birth (mo/day/yr) |
|---|---|---|---|---|
| HARRISON | REECE | | ▓▓▓▓▓ | ▓▓▓▓▓ |

| Authorized Contact (optional): | First Name | M.I. | Social Security # | Date of Birth (mo/day/yr) |
|---|---|---|---|---|
| | | | | |

| Address | City | State | Zip |
|---|---|---|---|
| 1999 26th St NW | Rochester | MN | 55901 |

| Home Phone | EMail Address | Mothers Maiden Name (for future ID purposes) |
|---|---|---|
| ▓▓▓▓ | ▓▓▓▓ | ▓▓▓▓ |

| Sponsor | Account Number with Sponsor |
|---|---|
| Legal Helpers Debt Resolution, LLC | |

### AUTHORIZATION TO DEBIT BANK ACCOUNT

**Financial Institution Information.**

Bank Name ▓▓▓▓▓

| Address | City | State | Zip |
|---|---|---|---|
| ▓▓▓▓ | ▓▓▓▓ | ▓ | ▓ |

| Routing Number * | Account Number ** |
|---|---|
| ▓▓▓▓ | ▓▓▓▓ |

**Customer Information**

| Name (as it appears on check) |
|---|
| REECE HARRISON |

| Address (as it appears on check) | City | State | Zip |
|---|---|---|---|
| | | | |

| Amount of Debit | Date of Debit |
|---|---|
| $ 842.11   On or after day 25 of each month until further notice. | |

I hereby authorize Global to initiate debit entries to my _X_ checking or ____ savings account at the financial institution named above (my "Primary Bank Account"), in the amount(s) and on or after the date(s) set forth above, and to debit the same to my Primary Bank Account for the purpose of transferring funds to my Special Purpose Account. I represent that my Primary Bank Account exists; that I own it; and that I will maintain sufficient funds in it to permit the debits to clear on the applicable dates. I understand that I may incur a charge as set forth in the Schedule of Fees and Charges if any attempted debit is not immediately honored when presented; and that the financial institution providing my Primary Bank Account may also assess a charge if this occurs. In addition, I understand that I may subsequently designate another account for this purpose by contacting Global customer service; that I may also change the corresponding amounts and dates from time to time in that manner; and that the representations I made above about My Primary Bank Account will apply to any other account that I designate.

This authorization shall remain in full force and effect until I give a written termination notice to Global that affords it a reasonable period of time to act on it. Any such notice, and any other written notice that is provided for in this Application or the Agreement, shall be sent to Global customer service at the address set forth in the Agreement. In addition, I understand that Global may terminate this authorization by providing me with a written notice at least ten (10) days prior to the actual termination.

1 Routing Number is the 9-digit number that appears in bottom left-hand corner of your check.
2 Account Number is to the right of the Routing Number and after the check number on your check.

### SCHEDULE OF FEES AND CHARGES

**Program Fees**
(refer to your Sponsor Agreement)

| | |
|---|---|
| Account Setup (one-time fee) | $ 0.00 |
| Monthly Service Fee: | $ 0.00 |
| **Transaction & Other Fees:** | |
| Premium Deposit Services | |
| Wire Transfer | $ 0.00 |
| Dishonored/returned deposit item | $ 0.00 |
| Premium Disbursement Services | |
| Wire Transfer | $ 0.00 |
| 2nd Day Delivery | $ 0.00 |
| (3PM Central Time Cut) | |
| Overnight Delivery | $ 0.00 |
| (3PM Central Time Cutoff) | |
| Stop Payment Order | $ 0.00 |

### CUSTOMER SERVICE

Global is the customer service agent for all matters relating to your Special Purpose Account. Any other questions relating to your Program should be addressed to your Sponsor. See the Agreement for the Global payment and correspondence addresses, the address of the Global website and the toll-free Global customer service number.

I prefer to receive my monthly statements:
- ☐ On-line; or
- ☐ Via U.S. mail (monthly statements will be mailed if neither box is checked)

FOR OFFICIAL USE ONLY

ACCOUNT NUMBER

PASSCODE

| Applicant Signature | Date |
|---|---|
| *Reece Harrison* | 6/22/2010 |

**FDIC Insurance:** The funds in your Account will be FDIC insured up to a maximum of $250,000.00 or such lower or higher limit as may be established by the Federal Deposit Insurance Corporation from time to time.

**Incomplete Transactions:** Neither Global nor the Bank, nor any service provider to either of them, will be liable for failing to complete a transaction if you do not have enough money in your Account to complete the transaction; or if circumstances beyond their control prevent the completion of the transaction, including, without limitation, the acts or omissions of any ACH, check or other processor, the National Automated Clearing House Association, the Federal Reserve System, any other bank, or the directive of any regulatory authority.

**Error Resolution Procedures:** In case of errors or questions about transactions involving your Account, call or write Global customer service no later than sixty days after the transaction in question has been reflected on your monthly statement. Please provide the following information:

1. Your name and Account number.

2. Date and amount of the transaction.

3. Type of transaction and description of the suspected error. Please explain as clearly as possible why you believe is an error or why you need additional information.

4. Dollar amount of the suspected error.

If you provide this information orally, you may be required to you also provide it in writing within ten business days. You will be told of the results of the investigation of the suspected error within ten business days after you submit the information and any error will be promptly corrected. However, if more time is required to investigate the suspected error, it may take up to an additional thirty days to complete the investigation. If it is determined that there is no error, you will be provided with a written explanation within three business days of such determination; and you may ask for and receive copies of the documents used in making any such determination

**Creditor Disputes:** You agree to settle all disputes about payments made to your creditors from your Account. Neither Global nor the Bank is a party to your debt settlement plan, and they do not participate in the negation of your debts. *Accordingly, you hereby expressly acknowledge that neither Global nor the Bank have any involvement in or responsibilities of any nature with respect to your debt settlement plan or the results that you may or may not achieve from its execution.*

**Governing Law:** The laws of the State of Oklahoma govern this Agreement. If any part of this Agreement is declared void or unenforceable, such provisions shall be deemed severed from this Agreement. The remainder of this Agreement shall remain in full force and effect, and shall be modified to any extent necessary to give such force and effect to the remaining provisions. No delay or forbearance in the strict observance or performance of any provision of this Agreement, nor any failure to exercise a right or remedy hereunder, shall be construed as a waiver of such performance, right, or remedy, as the case may be.

**Arbitration and Application of Law:** In the event of a dispute or claim relating in any way to this Agreement or our services, you agree that such dispute shall be resolved by binding arbitration in Tulsa Oklahoma utilizing a qualified independent arbitrator of Global's choosing. The decision of an arbitrator will be final and subject to enforcement in a court of competent jurisdiction.

**Limitation of Liability:** Under no circumstances shall Global pr the Bank ever be liable for any special, incidental, consequential, exemplary or punitive damages.

**USA Patriot Act Compliance:** In order to assist in combating terrorism and preventing the banking system from being used for money laundering purposes, you authorize Global and the Bank to take those steps that are reasonable and practical to identify you and any information about you, including, without limitation, securing or accessing a credit report on you, obtaining other information about you and otherwise verifying your identity as they are required to do by the USA Patriot Act.

**PRIVACY POLICY**

Personal information may be collected from your Account Application, any updated information you may provide from time to time and the transactions processed through your Account. A description of the Privacy Policy applicable to your Account is provided below. If you have additional questions regarding the privacy of your personal information, please contact Global customer service.

**Collection / Use of Personal Information:** Collection of your personal information is designed to protect access to your Account and to assist in providing you with the products and services you have requested All personal information collected and stored by Global or the Bank, or on their behalf, is used for specific business purposes to protect and administer your Account and initiate your authorized transactions, to help to design or improve the applicable products and services and to comply with state and federal banking regulations.

**Maintenance of Accurate Information:** It is your best interests to maintain accurate records concerning your personal information. For this reason, you are allowed to update your personal information online, at anytime, by using your Password to log into the Global website or by contacting Global customer service.

**Limited Access to Personal Information:** Access is limited to your personal information to only those personnel with a business reason for knowing such information. In addition, all personnel are educated about the importance of confidentiality and customer privacy. Individual user names and passwords are used by approved personnel to access your personal information, providing audit trails to further safeguard the privacy of your personnel information.

**Third-Party Disclosure Restrictions:** All third parties with a business need to access your personal information are required to adhere to stringent privacy policies. Your personal information may be supplied to a third party in order to process a transaction you have authorized or if the disclosure is allowed or required by law, e.g., the exchange of information with reputable reporting agencies in response to a subpoena, in connection with the investigation of fraudulent activity, etc.

**Additional Information:** If you have any questions regarding this Privacy Policy, please contact Global customer service.

**SCHEDULE OF FEES AND CHARGES**

One-time account setup ..................$ 0.00
Monthly service charge ..................$ 0.00
Transaction and other fees:
   Deposits
   Incoming wire transfer ................$ 0.00
Dishonored/returned deposit item ........$ 0.00
Disbursements:
   Wire transfer ..........................$ 0.00
   2nd day check delivery ...................$ 0.00
   Overnight delivery (3pm cutoff) .........$ 0.00
   Stop payment order .........................$ 0.00

**CUSTOMER SERVICE INFORMATION**

Website Address:
www.globalclientsolutions.com

Correspondence Address: 4500 S. 129th E. Avenue, Suite 175 Tulsa, OK 74134
Telephone - (800) 398-7191
Fax - (866) 355-8228 Email:
customersupport@globalclientsolutions.com

Note: Deposit instructions will be provided in the Global Welcome Packet for those customers who send in deposits.

## ACCOUNT AGREEMENT AND DISCLOSURE STATEMENT

This Account Agreement and Disclosure Agreement (this "Agreement") contains the terms, conditions, and disclosures that apply to your Special Purpose Account (your "Account"). By signing the application for your Account (your "Account Application") and using your Account, you agree that this Agreement shall apply; and you agree to abide by all of the terms, conditions, and rules set forth herein. If you have questions that you do not believe are addressed in this Agreement, you can and should call, e-mail, or write Global Client Solutions, LLC ("Global") at the number or address shown at the end of this Agreement. Please review this document carefully and keep it with your other important records. In this Agreement, the words, "I", "me", "mine", "my", "you" and "your" mean you and any other party who you authorize to use your Account.

**Purpose, Nature and Use of the Account:** Your Account is a special purpose account that you can use in connection with the debt settlement program you have undertaken. In general, you will be making periodic deposits to your Account from your primary bank account, and you will be periodically disbursing funds from your Account to repay your debts and the costs associated with your Account and your debt settlement program. Your Account is an FDIC-insured sub-account within a master custodial account maintained at the bank designated by Global (the "Bank"). You are the only one that has the right to authorize the transactions relating to your Account; and you may withdraw funds from your Account and/or close it at any time in the manner provided for below. Your Account may not be used for any illegal purpose.

**Passcodes / Passwords:** You will be provided with a four-digit passcode (your "Passcode") that you will use to access your Account via the telephone and to identify yourself when contacting a customer service representative. You will also be provided with an initial Internet password (your "Password") that you will use to access your Account via the Internet. You may change your Password from time to time for security purposes and you are encouraged to do so. You are responsible for the protection and use of your Passcode and Password. Do not disclose your Passcode or Password to anyone who does not have your permission to access your Account.

**Telephonic / Electronic Communications:** You authorize Global to accept and act upon any agreement or instruction received from you or authorized by you, concerning your

Account where you have communicated that agreement or instruction by telephone, facsimile, e-mail or other electronic means using a telephone keypad or computer. Use of your Passcode, Password or any other form of identification designated by you in any transaction constitutes and will be accepted as your electronic signature, as that term is used in the federal Electronic Signature in Global and National Commerce law and other applicable laws.

**Authorizing and Initiating Transactions:** You have authorized certain transactions to be undertaken in your Account Application. From time to time, you may change those instructions and/or give other instructions to initiate deposits to or disbursements from your Account by using your Password to log into the Global website or by contacting Global customer service. You may also convey instructions through the Sponsor identified on your Account Application, and such instructions may be acted on without further confirmation unless you direct otherwise in writing. In any event, you must always provide a reasonable period of time to act your instructions. All authorized deposits to your account will be initiated pursuant to your instructions from time to time and all authorized disbursements will be made from your Account provided it contains sufficient "good" funds to cover the amount of the disbursement. However, neither Global nor the Bank, nor any service provider to either of them, will be responsible for determining when a payment is actually due, nor shall they be responsible for determining whether a payment is for the correct amount or otherwise proper. Their sole obligation in this regard will be to execute your payment instructions in a commercially reasonable manner as soon as practical after receipt of such instructions; and if they perform in such manner, they shall not be responsible for any late payment fee, penalty or other charge levied by your creditor, for any failure of your creditor to honor a settlement or for any other adverse action taken or not taken by your creditor or any other party.

**Fees and Charges:** You promise to pay the fees and charges shown in the Schedule of Fees and Charges set forth below and in your Account Application; and you agree that these fees and charges may be deducted directly from your Account. The monthly service charge for the first month in which your Account is opened will not be prorated and will be deemed earned on the first day your account is opened. Thereafter, the monthly service charge will be deemed earned in full on the first day of each calendar month during which your Account remains open. Other fees will be deemed earned at the time of the transaction or the event that gives rise to the fee.

The fees and charges relating to your Account may be increased for any increase in the associated costs and expenses, in which case you will be provided with at least thirty days prior written notice.

**Termination of Agreement:** You may terminate this Agreement and close your Account at any time by sending a written notice to Global customer service. In addition, this Agreement may be terminated and your Account cancelled at any time without notice for inactivity, if your Account is improperly maintained or used, or if you otherwise violate any provision of this Agreement. If this Agreement is terminated for any reason, the collected balance in your Account will be sent to by check within a reasonable period of time.

**Default and Collection of Accounts:** If your Account is suspended, cancelled or otherwise terminated for any reason and your Account has a negative balance, you agree to pay the negative balance upon demand. Should you fail to remit the full amount of such negative balance, you shall remain responsible for the deficit and collection actions may be pursued against you. If any such collection action is undertaken, you agree to pay all court costs and collection fees, including reasonable attorney's fees, to the extent permitted by applicable law.

**Monthly Statements:** You will receive a monthly statement showing your Account activity and balance by mail unless you have elected to receive your statement electronically. Additionally, you may obtain balance and transaction information by using your Passcode to access your Account via the telephone, by using your Password to log into the Global website or by calling Global customer service. You agree to carefully inspect your statement and promptly report any erroneous, improper or unauthorized transactions.

**No Interest:** No interest will be paid to you on or with respect to your Account.

**Consumer Liability:** If you believe someone has transferred or may transfer money from your Account without your permission, contact Global customer service immediately. Telephoning is the best way to keep your possible losses down. Only approved personnel will have access to your personal information. Furthermore, auditing mechanisms have been put into place to further protect your information by identifying the personnel who may have accessed and in any way modified, e.g., updated or added to, your personal information.



**LEGAL**HELPERS
DEBT RESOLUTION, LLC

The National Law Firm of Macey, Aleman, Hyslip & Searns
P: (866) 528-9169 | F: (866) 945-9166 | www.legalhelpersdrcs.com

**MAIN OFFICE**
Sears Tower
233 S Wacker Dr., Suite 5150
Chicago, IL 60606

**ADMINISTRATIVE OFFICE**
2152 DuPont, Suite #101
Irvine, CA 92612
Ph: (866) 528-9169
F: (866) 945-9166
cs@legalhelpersdrcs.com

# TERMINATION LETTER

Date: 03/16/2011

REECE HARRISON

1999 26th St NW

Rochester, MN 55901

Dear  REECE HARRISON             :

Per your request, we are terminating representation on your file and will close it.  Please note that the retainer fee has been earned by the work of our attorneys.  Furthermore, based on a review of your file, we believe that the costs have also been earned.

We can no longer accept any creditor phone calls on your behalf, nor handle any further creditor mail. **Our office no longer represents you in any matters pertaining to your debts.** Our lawyer/client relationship is hereby terminated.

We understand how difficult things can be when you are in debt. We are willing to discuss with you, at no additional fee, whether bankruptcy is appropriate for you. We hope that if you do not use our services, that you at least find someone who can help you. If you wish at any time to re-open your file with our office, there may be additional fees charged based on the amount of time that has passed and any changes in your circumstances.

Regards,

**Jeffrey S. Hyslip, Esq.**
Partner
Licensed in Ohio

EXHIBIT
3

**PARTNERS**

Melinda Dionne (AL)
Eric Auten (AK)
Carlene Simmons (AZ)
Steve Westerfield (AR)
Richard Gustafson (CA)
Jason Searns (CO)
Matt Rousseau (CT)
Carucci Matthew (DE)
Karen Gato (FL)
Berk Souls (GA)

Greg Dunn (HI)
William Ranill (ID)
Thomas Macey (IL)
Jeffrey Aleman (IL)
Shobhana Kasturi (IN)
Sam Turco (IA)
Keith Wellman (KS)
Debbie Bowman (KY)
Gary Brown (LA)
Jeremey Miller (ME)

Soaia Kachbar (MD)
Troy Morrison (MA)
Lori Leigh (MI)
James Agosto (MN)
John Windsor (MS)
Keith Wellman (MO)
Sean Paul (MO)
Ralph Wilkerson (MT)
Sam Turco (NE)
Donald Norris (NV)

Brian McCaffrey (NH)
Thomas Nicely (NJ)
Ronald Banerji (NM)
Maria Coen (NY)
Grant Patten (NC)
Keith Trader (ND)
Jeffrey Hyslip (OH)
Ron Brown (OK)
Amber Wolf (OR)
Thomas Nicely (PA)

Robert Jacquard (RI)
John Cantrell (SC)
Tim Hogan (SD)
Everett Mechem (TN)
Martin Pack (TX)
Oliver Myers (UT)
Martin Conway (VA)
Timothy King (VT)
Mona Lisa Gacutan (WA)
William Murphy (WI)

Reece A. Harrison

1999 26th St NW

Rochester, MN.  55901                                   March 10, 2011


To Whom it may Concern:

RE:  Reece Harrison Client Number 3W-41480

I have been advised by a bankruptcy attorney, and after careful consideration I have decided to
terminate our agreement with Legal Helpers under Paragraph XIV of our agreement signed
06/22/2010.  Services from Legal Helpers is no longer requested or needed.

Furthermore, you are hereby given notice that you should stop all automatic withdrawals from
my banking account given under this agreement.  This Notice is well beyond the 5 days' notice
required by the agreement.

Since Legal Helpers was unable to work with 2 of the creditors listed in the agreement and
lawsuits have been filed and wage garnishment is going into effect.  Please refund all money
currently in my trust account which is $838.90.


Thank you



Reece A. Harrison