UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Reece Harrison, on behalf of himself, and
a class of similarly situated individuals,

        Plaintiff,

v.

Legal Helpers Debt Resolution, LLC; d/b/a
The Law Firm of Macey, Aleman, Hyslip & Stern;
CDS Client Services, Inc.; and James Agosto,

        Defendants.

**MEMORANDUM OPINION AND ORDER**
Civil No. 12-2145 ADM/TNL

Shawn J. Wanta, Esq., Baillon Thome Jozwiak & Wanta, LLP, Minneapolis, MN, and Brian J. Ellsworth, Esq., Law Office of Brian J. Ellsworth, Rochester, MN, on behalf of Plaintff.

Kevin M. Carrara, Esq., Charles L. Philbrick, Esq., and Polina Arsentyeva, Esq., Rathje & Woodward, LLC, Wheaton, IL; and Jeffrey E. Grell, Esq., and S. Steven Prince, Esq., Grell & Feist LLC, Minneapolis, MN, on behalf of Defendants.

## I. INTRODUCTION

On July 7, 2014, the undersigned United States District Judge heard oral argument on Defendants Legal Helpers Debt Resolution, LLC ("LHDR"), and James Agosto's Motion to Vacate Arbitrator's Partial Final Decision [Docket No. 58]. Plaintiff Reece Harrison opposes the motion. For the reasons set forth below, Defendants' motion is denied.

## II. BACKGROUND

On August 10, 2012, Harrison filed a putative class action in Olmsted County District Court. Not. of Removal [Docket No. 1]. Harrison alleges that in June 2010, he responded to an internet advertisement by Defendants purporting to offer debt settlement and credit repair services. Id. Ex. A (Compl.) ¶¶ 27-28. LHDR, advertising itself as a law firm, contacted Harrison. LHDR offered to have its attorneys review Harrison's financial situation and tailor a

debt resolution plan. Although correspondence to Harrison appeared to be from LHDR, Harrison alleges LHDR's contact information, such as its phone numbers and addresses, actually are those of Defendant CDS Client Services, Inc. ("CDS"). Id. ¶ 29. Harrison alleges CDS used its affiliation with LHDR, and LHDR's managing partner James Agosto, to circumvent consumer protection laws. By representing themselves as a law firm, Harrison alleges, Defendants could charge higher fees and omit otherwise-necessary disclosures. Id. ¶¶ 20-25.

Unaware of this alleged scheme at the time, Harrison signed an "Attorney Retainer Agreement" (the "Agreement") with LHDR. Charles L. Philbrick Decl. [Docket No. 60] Ex. A. Harrison alleges Defendants made numerous misrepresentations in the Agreement and ultimately failed to provide the promised services. Harrison further alleges Defendants gave him incorrect, self-serving, and possibly illegal advice, thereby worsening his financial situation. Compl. ¶¶ 35-37. As part of Defendants' purported debt resolution plan, Harrison paid thousands of dollars to Defendants in monthly installments. Harrison alleges Defendants retained the majority of these payments as fees. Id. ¶¶ 47-51.

The Agreement included an arbitration clause, which stated in part:

> In the event of any claim or dispute between Client and LHDR related to the Agreement or related to any performance of any services related to this Agreement, such claim or dispute shall be submitted to binding arbitration upon the request of either party upon the service of that request. The parties shall initially agree on a single arbitrator to resolve the dispute. The matter may be arbitrated either by the Judicial Arbitration Mediation Services or American Arbitration Association, as mutually agreed upon by the parties or selected by the party filing the claim.

Agreement § XVIII. On September 25, 2012, LHDR and Agosto moved to compel arbitration [Docket No. 12]. On December 19, 2012, Harrison, LHDR, and Agosto filed a joint stipulation

in which they agreed to submit the case to arbitration and stay the federal proceedings [Docket No. 24].[1] In the meantime, CDS reached a settlement agreement with Harrison that included the claims of a settlement class. See Order, Feb. 18, 2014 [Docket No. 55]. CDS is not a party to the arbitration at issue, and has not joined in the present motion.

Sometime before February 4, 2014, the parties held a phone conference with the arbitrator, Judge James Rosenbaum (ret.) (also referred to as the "Arbitrator"). During the conference, the parties asked Judge Rosenbaum to decide whether the arbitration clause encompassed class claims. In response, on February 4, 2014, Judge Rosenbaum issued a scheduling order requiring the parties to submit briefing on the issue of class arbitration. The parties complied. See Philbrick Decl. Ex. B ("Partial Final Decision").

On April 25, 2014, Judge Rosenbaum issued the Partial Final Decision. Id. The Arbitrator concluded the Agreement was silent as to class arbitration. After reviewing relevant authority from the United States Supreme Court, the Arbitrator referred to principles of contractual interpretation, which in turn led him to consult Minnesota statutes. Because Minnesota law expressly authorizes class action claims in the debt settlement context, the Arbitrator allowed Harrison to proceed with a putative class arbitration. Id. at 5-7.

On May 8, 2014, LHDR filed the present motion to vacate the Partial Final Decision, arguing Judge Rosenbaum exceeded his authority by allowing Harrison to proceed with class claims.

---

[1] For the remainder of this Order, LHDR and Agosto shall be referred to jointly as "LHDR," unless otherwise specified.

## III.  DISCUSSION

### A.  Arbitration Review Standard

Courts provide "an extraordinary level of deference" to an underlying arbitration award. Med. Shoppe Int'l, Inc. v. Turner Invs., Inc., 614 F.3d 485, 488 (8th Cir. 2010) (quoting Schoch v. InfoUSA, Inc., 341 F.3d 785, 788 (8th Cir. 2003)).  A reviewing court must confirm an arbitrator's award even if it is "convinced that the arbitrator committed serious error, so long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority."  McGrann v. First Albany Corp., 424 F.3d 743, 748 (8th Cir. 2005).

The Federal Arbitration Act (FAA) authorizes a district court to vacate an arbitration award in four circumstances, only the last of which is relevant to LHDR's motion: "the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made."  9 U.S.C. § 10(a)(4).  A party attempting to vacate an award under § 10(a)(4) "bears a heavy burden."  Oxford Health Plans LLC v. Sutter, 133 S. Ct. 2064, 2068 (2013).  It is not sufficient to show the arbitrator "committed an error—or even a serious error."  Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp., 559 U.S. 662, 671 (2010).  This is because the parties "bargained for the arbitrator's construction of their agreement."  Oxford, 133 S. Ct. at 2068 (quoting E. Associated Coal Corp. v. United Mine Workers, 531 U.S. 57, 62 (2000)).

### B.  Question of Arbitrability

Before reviewing the Arbitrator's decision, it is important to clarify the precise issue to be reviewed.  There is a subtle but significant difference between reviewing what an arbitrator has decided, as opposed to what an arbitrator can decide.  The latter, sometimes referred to as a

4

"question of arbitrability," goes to whether the parties have agreed to submit an issue to arbitration at all. In these limited circumstances, "courts assume that the parties intended courts, not arbitrators," to answer the question. Green Tree Fin. Corp. v. Bazzle, 539 U.S. 444, 452 (2003). Questions of arbitrability include certain "gateway matters," such as whether the arbitration clause is valid, or whether a valid arbitration clause applies to a specific type of controversy. See id. The United States Supreme Court has not yet decided whether the availability of class arbitration is a gateway matter for courts to decide, or whether it is a matter of contract interpretation reserved for arbitration. See Stolt-Nielsen, 559 U.S. at 679; Oxford, 133 S. Ct. at 2068 n.2.

In accordance with Oxford, however, the Court need not reach the issue of whether class arbitration is a matter of arbitrability. In Oxford, the parties agreed a valid arbitration clause governed their dispute, but disagreed about whether the clause allowed for class arbitration. Oxford, 133 S. Ct. at 2069. The parties chose to submit the question of class arbitration to the arbitrator. When the arbitrator found the arbitration clause allowed for class claims, the plaintiff Oxford appealed. Id. On review, the Supreme Court declined to reach the issue of whether class arbitration was a "gateway" matter. This was because, during arbitration, Oxford had agreed with the defendant "that an arbitrator should determine what their contract meant, including whether its terms approved class arbitration." Id. at 2071. By doing so, Oxford precluded itself from later raising the issue before the court as a question of arbitrability. Id. at 2068 n.2. In other words, Oxford chose arbitration and could not "rerun" the issue in court because it was unhappy with the arbitrator's decision. Id. at 2071. Ultimately, the Court confirmed the arbitrator's decision under the limited judicial review conferred by § 10(a)(4). Id. at 2070-71.

Like the plaintiff in Oxford, LHDR agreed the issue of class arbitration fell within the Arbitrator's purview. As in Oxford, the parties here agree a valid arbitration clause exists, and that the clause applies to the underlying dispute. Critically, LHDR agreed to submit the question of class arbitration to Judge Rosenbaum, and it did so even after the Supreme Court issued its decision in Oxford. See id. at 2068 n.2; see also S. Commc'ns Servs., Inc. v. Thomas, 720 F.3d 1352, 1358 n.6 (11th Cir. 2013) (applying Oxford and holding issue of class arbitration could not be re-raised in court because parties agreed arbitrator should decide issue). LHDR had every opportunity to challenge the issue of class arbitration in court as a "gateway" matter, but did not.[2] Instead, LHDR chose to submit the issue to the Arbitrator as a matter of interpreting contract language and ascertaining the parties' intent:

> [T]he parties asked the Arbitrator to decide a narrow issue of contract interpretation: whether Harrison and LHDR, who agreed to arbitrate disputes between themselves arising out of [the Agreement] also agreed to arbitrate disputes between LHDR and all of LHDR's Minnesota clients other than Harrison.

LHDR's Mem. Supp. Mot. to Vacate [Docket No. 59] ("LHDR's Mem.") 1-2. Having lost the arbitrator's decision, LHDR now seeks a "rerun" on the clause's interpretation. Oxford, 133 S. Ct. at 2071. However, LHDR submitted the issue to arbitration and "it must now live with that choice." Id.

Even if LHDR had properly raised the issue, persuasive authority supports that the availability of class arbitration is not a "gateway" matter and is thus reserved for the arbitrator to

---

[2] LHDR's decision to submit the issue to arbitration contrasts with the parties' actions in Stolt-Nielsen. There, the parties stipulated that they had not made any agreement as to class arbitration, and the stipulation "left no room for an inquiry regarding the parties' intent." Stolt-Nielsen, 559 U.S. at 676.

decide. As noted above, the Supreme Court remains undecided on the issue. See In re A2P SMS Antitrust Litig., No. 12 CV 2656(AJN), 2014 WL 2445756, at *5-7 (S.D.N.Y. May 29, 2014) (analyzing relevant precedent). However, a plurality of the Supreme Court held that when an arbitration clause is silent on class claims, the availability of class arbitration is a procedural question properly placed before the arbitrator. Bazzle, 123 S. Ct. at 452-53. The plurality in Bazzle explained that the question of class arbitration is not whether the parties "agreed to arbitrate a matter." Id. at 452. Rather, the question is "what kind of arbitration proceeding the parties agreed to." Id. That question, the Court held, was a matter of "contract interpretation and arbitration procedures" best reserved for the arbitrator. Id. at 452-53. Justice Stevens concurred in part, stating, "Arguably the interpretation of the parties' agreement should have been made in the first instance by the arbitrator, rather than the court." Id. at 455.

In Stolt-Nielsen, the Court emphasized that Bazzle did not "yield a majority decision" on whether courts or arbitrators should decide the availability of class arbitration. Stolt-Nielsen, 559 U.S. Ct. at 679. However, again the Court declined to reach the issue. Unlike in Bazzle, the parties in Stolt-Nielsen stipulated that the arbitration clause was not ambiguous, and that they had made no agreement as to class arbitration. Id. at 668. This stipulation, the Court held, left the arbitration panel with "no room" to interpret the parties' intent as to class arbitration. See id. at 676. As a result, the Court found the arbitration panel had exceeded its authority under § 10(a)(4) by allowing class claims. See id. In its holding, the Court cautioned that class arbitration differed significantly from bilateral arbitration in terms of costs, efficiency, and the ability to choose expert arbitrators. Class arbitration also involved different procedural and confidentiality considerations, and limited the judicial review of potentially high-stakes

litigation. Id. at 685-87; see also AT&T Mobility LLC v. Concepcion, 131 S. Ct. 1740, 1750 (2011) (identifying similar concerns). The Court thus held silence on the issue of class arbitration should not prompt arbitrators to automatically "presume" its availability. Stolt-Nielsen, 559 U.S. at 687.

In the absence of controlling precedent from the Supreme Court, federal courts have diverged on the availability of class arbitration where the arbitration clause is silent. The Tenth Circuit Court of Appeals has held arbitrators should decide the availability of class arbitration. Quilloin v. Tenet HealthSytem, Phila., Inc., 673 F.3d 221, 232 (10th Cir. 2012).[3] Several district courts, in particular the Northern District of Illinois and the District Courts of New York, have similarly held. See, e.g., In re A2P SMS Antitrust Litig., 2014 WL 2445756, at *10-12; Kovachev v. Pizza Hut, Inc., No. 12 C 9461, 2013 WL 4401373, at *1-2 (N.D. Ill. Aug. 15, 2013); Kenneth J. Lee v. JPMorgan Chase & Co., 982 F. Supp. 2d 1109, 1113 (C.D. Cal. 2013); Guida v. Home Sav. of Am., Inc., 793 F. Supp. 2d 611, 617-18 (E.D.N.Y. 2011) (collecting cases). In contrast, the Courts of Appeal for the Third and Sixth Circuits have held class arbitration is a "gateway" matter for courts to decide. Opalinski v. Robert Half Int'l Inc., ---

---

[3] Although the Seventh Circuit Court of Appeals does not appear to have reached the issue, the appellate court has indicated a preference for deferring such questions to the arbitrator. See Emp'rs Ins. Co. of Wausau v. Century Indem. Co., 443 F.3d 573, 581-82 (7th Cir. 2006). In Wausau, the arbitration clause was silent as to consolidated arbitration, and the Seventh Circuit held consolidation was a procedural issue reserved for the arbitrator. Id. In so holding, the court acknowledged Bazzle as relevant but declined to rely on it, finding Bazzle had not stated a controlling rationale. Id.
   Courts in the Northern District of Illinois have cited Wausau in support when finding the availability of class arbitration should be decided by an arbitrator. See, e.g., Price v. NCR Corp., 908 F. Supp. 2d 935, 944-45 (N.D. Ill. 2012); see also Blue Cross Blue Shield of Mass., Inc. v. BCS Ins. Co., 671 F.3d 635, 636-37 (7th Cir. 2011) (holding Stolt-Nielsen did not supersede Wausau).

F.3d ----, No. 12-4444, 2014 WL 3733685 (3d Cir. July 30, 2014); Reed Elsevier, Inc. ex rel LexisNexis Div. v. Crockett, 734 F.3d 594 (6th Cir. 2013). The remaining appellate courts, including the Eighth Circuit Court of Appeals, have not yet reached the issue. See, e.g., Thomas, 720 F.3d at 1358 n.6.

Even assuming LHDR had properly preserved the issue of class arbitrability, the argument would be rejected. Bazzle and the decisions of the courts cited above provide persuasive authority on why the availability of class arbitration is not a "gateway" matter. The parties in this case have agreed the arbitration clause is enforceable and that it covers their substantive claims. See Bazzle, 539 U.S. at 452-53. In such circumstances, the range of disputes a court may resolve is limited by the FAA's clear preference for arbitration, and courts should "be reluctant to expand the categories of 'questions of arbitrability' beyond the limits identified by the Supreme Court." In re A2P, 2014 WL 2445756, at *10; see also Price, 908 F. Supp. 2d at 946.

The cautionary note sounded by the Supreme Court in Stolt-Nielsen regarding the practical differences between bilateral and class arbitration does not alter the outcome. To be sure, Stolt-Nielsen makes clear that class arbitration invokes considerations not necessarily anticipated by the parties before they began arbitration. See Stolt-Nielsen, 559 U.S. 685-86. On that basis, there is room for arguing class arbitration is a "gateway" matter. See Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 83-84 (2002). In at least this case, however, the parties will not be forced to arbitrate any substantive dispute they did not agree to arbitrate, and their decision to submit the issue of class arbitration to the Arbitrator demonstrates they specifically anticipated this issue and its antecedent considerations. See State Farm Fire & Cas. Co. v.

Pentair, Inc., No. 11 CV 06077, 2012 WL 3904104, at *4 (N.D. Ill. Sept. 7, 2012) (identifying similar considerations and reaching same conclusion).

Even more significantly, the Supreme Court's decision in Stolt-Nielsen, as one lower court held, did not "rebut the core point in Bazzle that the class of questions of arbitrability is a limited one, and that the availability of class arbitration pertains to the procedures to be employed at an arbitration, not whether an arbitration is permissible in the first instance." In re A2P, 2014 WL 2445756, at *12. Although Bazzle lacked a controlling majority, the plurality opinion dealt with precisely the same issue pending in the present motion, and no Supreme Court decision has subsequently offered clearer guidance. As such, Bazzle guides the analysis here, and class arbitration is reserved as a matter for the Arbitrator to decide.

**C.  Review Under 10(4)(a)**

Having addressed the "gateway" issue, the only remaining question is whether Judge Rosenbaum exceeded his authority in determining the Agreement allows for class claims. As stated above, review under § 10(4)(a) is extremely deferential. So long as the arbitrator "arguably" interpreted the arbitration clause at issue, the reviewing court must confirm the decision. Oxford, 133 S. Ct. at 2068.

LHDR argues the Arbitrator exceed his authority because he ignored language in the Agreement expressly disclaiming class actions. LHDR bases the large part of its argument on the language in the arbitration clause, which covers: "any claim or dispute between Client and LHDR." Agreement § XVIII. This phrase, LHDR argues, forecloses class claims because any other potential disputes would not be between "Client and LHDR," but would necessarily involve other "clients." Similarly, the Agreement limits arbitration to services provided in

accordance with "this Agreement," and states arbitration "shall be conducted in either the county in which Client resides, or the closest metropolitan county." Id.  Beyond the text of the Agreement, LHDR argues the Arbitrator failed to consider the tailored nature of the services provided to Harrison, and how individual claims will necessarily differ when they involve different clients.

Contrary to LHDR's arguments, the Agreement is silent as to class arbitration.  Phrases such as "between Client and LHDR" and "this Agreement" are routine contract terms that do not expressly disclaim class litigation.  All contracts are necessarily written between the parties to a transaction; if the identification of the parties or reference to "this agreement" precluded class litigation, class claims could never stem from contracts.  This is obviously not the case.  The relevant consideration is whether all of the putative class members are similarly situated in respect to the defendant.  What county the arbitration should take place in, and whether other LHDR clients have claims that can be redressed as a class, are issues relevant to class certification and not the availability of class claims.

In support of this conclusion, the Supreme Court has reviewed arbitration clauses using similar language to the Agreement and found silence on the issue of class litigation.  In Bazzle, the arbitration clause limited the scope of its agreement to all disputes "relating to this contract or the relationships which result from this contract." Bazzle, 539 U.S. at 448.  The clause also stated the arbitrator would be selected "by us with consent of you," and made multiple references to arbitration between "the parties."  Id. (emphasis added).  Nevertheless, the Supreme Court, including the dissent, found the clause silent as to class arbitration.  See id. at 456.

In Stolt-Nielsen, the Court reviewed a maritime contract referred to as a "charter party."

11

The arbitration clause stated "any dispute arising from . . . this Charter Party shall be settled in New York," with "Owner and Charterer each appointing an arbitrator." Stolt-Nielsen, 559 U.S. at 667. In reaching its decision, the Court again found the arbitration clause silent on the issue of class claims. Id. at 685-87. And in Oxford, the arbitration clause referred to disputes arising "under this Agreement," and required arbitration to occur in New Jersey. Oxford, 133 S. Ct. at 2067. Yet again, the Supreme Court held the clause did not address the issue of class litigation. Id. at 2069-70. In each instance, the arbitration clause referred to the specific parties to the arbitration clause, to the specific contract at issue, and in some cases to the place in which the arbitration must take place. In each case, the Supreme Court found silence on the issue of class arbitration.

Several courts have also found silence on the issue of class arbitration despite language similar to the Agreement here. See, e.g., Quilloin, 673 F.3d at 225-26 (arbitration clause covers claims between "Company and I"); Kovachev, 2013 WL 4401373, at *1 (parties limited arbitration to "Pizza Hut and I"); Price, 908 F. Supp. 2d at 938 (arbitration clause covered claims related to "[Plaintiff's] employment with Defendant") (quotation omitted); Lee, 982 F. Supp. 2d at 1109 (arbitration clause covered any disputes related to "my employment . . . with Washington Mutual"); Hesse v. Sprint Spectrum LP, No. C06-0592JLR, 2012 WL 529419, at *1 (W.D. Wash. Feb. 17, 2012) (original arbitration clause covered disputes "between the customer and the company"); Guida, 793 F. Supp. 2d at 613 (plaintiffs each had identical arbitration clauses covering claims "in connection with my employment").

Based on Supreme Court precedent and the persuasive authority cited here, the phrases "between Client and LHDR" and "this Agreement" do not exclude class claims. Apart from

these phrases, LHDR identifies no other language implicitly or explicitly limiting class arbitration. As a result, the Arbitrator did not exceed his authority by interpreting the Agreement on the issue of class arbitration.

LHDR further argues the Arbitrator exceeded his authority by injecting policy considerations into his analysis instead of ascertaining the parties' intent. This argument is not persuasive. In the Partial Final Decision, the Arbitrator explicitly considered the language of the arbitration clause in an attempt to discern the parties' intent, including the phrase "between Client and LHDR," a phrase LHDR now contends the Arbitrator ignored. See Partial Final Decision at 5. The Arbitrator found the arbitration clause silent on the disputed issue, and thus turned to basic contract interpretation principles, which included consulting "other relevant sources" for assistance in discerning the intent of the parties. Partial Final Decision at 6 (quoting Boise Cascade Corp. v. Paper Allied-Indus., Chem. & Energy Workers (PACE) Local 7-0159, 309 F.3d 1075, 1082 (8th Cir. 2002)). Reviewing Minnesota law—the law applicable to the Agreement—the Arbitrator concluded LHDR would have been aware of Minnesota's debt settlement statutes because LHDR specialized in debt settlement services. Because Minnesota law expressly authorizes class actions for debt settlement claims, the Arbitrator concluded LHDR's decision not to include a class action waiver in the Agreement indicated an intent to allow class claims. See Minn. Stat. § 332B.13, subd. 2(b). This analysis demonstrates at least "arguable" interpretation of the Agreement, and thus must be given considerable deference. See Oxford, 133 S. Ct. at 2068.

LHDR argues that like the arbitration panel in Stolt-Nielsen, Judge Rosenbaum ignored the parties' intent and instead set out to impose his "own conception of sound policy." Stolt-

13

Nielsen, 559 U.S. at 675. In Stolt-Nielsen, the parties stipulated that the arbitration clause was unambiguous, and that they had never intended to form any agreement as to class arbitration. This stipulation precluded all possibility for an arbitration panel to find ambiguity and examine the parties' intent. Id. at 676. In addition to ignoring the effect of the stipulation, the panel applied its own personal policy preferences instead of applying a rule of decision "derived from the FAA or either maritime or New York law." Id.; see also id. at 674 n.6 (stating that under New York and maritime law, "custom and usage" is relevant to determining parties' intent when agreement is ambiguous).

In contrast, the Arbitrator here proceeded very differently than the panel in Stolt-Nielsen. The Arbitrator was specifically asked to ascertain the parties' intent in forming the Agreement. See LHDR's Mem. at 1-2. As requested, the Arbitrator reviewed the language of the Agreement. After finding the Agreement silent, the Arbitrator referred to the applicable principles of contract interpretation, which in turn led him to examine Minnesota debt settlement statutes. See Partial Final Decision at 6-7. This approach to contract interpretation is in keeping with Stolt-Nielsen, which chastised the arbitration panel for straying from the applicable bodies of law. See Stolt-Nielsen, 559 U.S. at 676; see also Thomas, 720 F.3d at 1359-60 (holding arbitrator did not exceed his authority in allowing class arbitration because he reviewed arbitration clause in light of relevant arbitration rules and Georgia state law); Hill v. Wackenhut Servs. Int'l, 971 F. Supp. 2d 5, 13-14 (D.D.C. 2013) (accord).[4] Unlike in Stolt-Nielsen, the Arbitrator did not impose his

---

[4] Also relevant but not addressed by the parties are the JAMS Class Action Procedures, to which the parties submitted as part of the JAMS arbitration. See Partial Final Decision at 2. Rule 1 allows for class arbitration in the absence of a "class preclusion clause." JAMS Class Action Procedures, available at http://www.jamsadr.com/rules-class-action-procedures/. Rule 2 charges the arbitrator with "following the law applicable to the validity of the arbitration clause

own personal policy preferences onto the parties. Instead, he properly referred to applicable law. Even if the Arbitrator committed "grave error" under those circumstances, it would not be sufficient to warrant vacating the award. Oxford, 133 S. Ct. at 2070.

## IV. CONCLUSION

Based upon the foregoing, and all of the files, records and proceedings herein, **IT IS HEREBY ORDERED** that Defendants Legal Helpers Debt Resolution, LLC, and James Agosto's Motion to Vacate Arbitrator's Partial Final Decision [Docket No. 58] is **DENIED**.

BY THE COURT:

    s/Ann D. Montgomery
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated: August 22, 2014.

---

as a whole, or the validity of any of its terms." Id. These rules further support the Arbitrator's ruling on class arbitration.